HUNT v. HUNT.

4-6273                                                    149 S. W. 2d 930

Opinion delivered March 31, 1941.

*Owens, Ehrman & McHaney* and *W. A. Leach,* for appellant.

*M. F. Elms,* for appellee.

HOLT, J. May 23, 1939, Harry Hunt, appellant, brought suit against Abbie Hunt, appellee; Mrs. M. L. Brodie, widow of George Brodie, Sr., deceased, and his

heirs, for the possession of 320 acres of land in Arkansas county, Arkansas, and to have title thereto vested in him.

It was alleged in the complaint that prior to April 30, 1938, appellant was the owner of the land in question and that it had been ordered sold to satisfy a mortgage thereon, and that at the sale the land was bought by George Brodie, Sr., in Brodie's name for $16,750, which money was furnished by appellant.

It was further alleged that before the sale it was agreed between appellant and George Brodie, Sr., that appellant was to furnish the purchase money and that Brodie was to buy the land at the sale, take title in his own name and after the termination of the foreclosure proceedings, convey the land to appellant; that since he furnished Brodie the purchase money he (appellant) was the real purchaser and the owner of said lands; that Brodie held the naked legal title in trust for him; and that upon Brodie's death, intestate, the legal title passed to his heirs coupled with this trust.

Separate answer was filed by the widow and the heirs of George Brodie, Sr., in which they disclaimed any interest in the land in question and asserted title thereto to be in appellee, Abbie Hunt.

Abbie Hunt filed separate answer denying the material allegations in appellant's complaint and alleged that it was the intention and understanding between herself and appellant, and also so understood by George Brodie, Sr., that Brodie was to purchase, and did purchase, the land in trust for the use and benefit of appellee, and that any money furnished by appellant for the purchase of this land by Brodie was furnished with the express intention on the part of appellant, as well as appellee, that said land was to be so purchased for the use and benefit of appellee and that she should have title thereto.

She further alleged that after the death of George Brodie, Sr., in furtherance of this intention, appellant procured and caused a deed to be executed to appellee to this land from the widow and heirs of George Brodie.

The trial court found the issues in favor of appellee and entered a decree dismissing appellant's complaint

and vesting title to the land in appellee. This appeal followed. We try the cause here *de novo*.

It is undisputed, on the record before us, that George Brodie, Sr., held the naked legal title to the land in question for the use and benefit of the beneficial owner and that he had no other title or interest therein. It is the contention of appellant that he was the real and beneficial owner and that Brodie was holding said land in trust for him; while appellee, Abbie Hunt, insists that she, on the other hand, was the real and beneficial owner and that Brodie held the land in trust for her.

It appears that on October 3, 1932, appellee, together with her infant daughter about six months old, went to live in the home of appellant as his housekeeper. She remained in this capacity until July 12, 1933, when she and appellant were married. During this period of employment she was paid for her services. They lived together as husband and wife until July 1, 1935, when they were divorced. The decree of divorce settled all property rights between the parties, but the nature of this settlement is not disclosed in the decree.

A few months following the divorce, late in 1935 or in the early part of 1936, appellant induced appellee to return to his home with her small daughter, and without the formality of remarriage, she lived with appellant, in every respect as his wife, continuously for a period of approximately three years, or until about the time this suit was filed.

At the time these parties were married in 1933, appellant owned not only the 320-acre tract of land in question here but also a 640-acre tract, and both tracts were heavily mortgaged. Nothing was paid on either of these mortgages until the termination of the foreclosure proceedings and the sale of the property in May, 1938. The section of land was purchased by the mortgageholder at the foreclosure sale for the total amount against it, which amounted to more than $33,000. The tract involved here, 320 acres, was purchased by George Brodie, Sr., the father of appellee, Abbie Hunt, in Brodie's name.

We must first determine the nature or kind of trust created here. We think it clear from the record that no express trust was created, for such a trust can only arise out of the direct and positive acts of the parties. Such a trust can never be implied or arise by operation of law and can be proved only by some instrument in writing signed by the party enabled by law to declare the trust. Such a trust cannot be created by parol testimony.

No such instrument in writing purporting to be signed either by appellant or appellee appears here, and therefore under the express terms of § 6064 of the Statute of Frauds, Pope's Digest, there can be no enforceable express trust in the land here. *Bray* v. *Tims*, 162 Ark. 247, 258 S. W. 338.

Section 6064 of Pope's Digest, is: "All declarations or creations of trusts or confidences of any lands or tenements shall be manifested and proven by some writing signed by the party who is or shall be by law enabled to declare such trusts, or by his last will in writing, or else they shall be void; and all grants and assignments of any trusts or confidences shall be in writing, signed by the party granting or assigning the same, or by his last will in writing, or else they shall be void."

Section 6065 of Pope's Digest, is: "Where any conveyance shall be made of any lands or tenements, by which a trust or confidence may arise or result by implication of law, such trust or confidence shall not be affected by anything in this act."

The nature of the trust created here is an implied trust by implication of law. An implied trust includes a resulting trust and may be established by parol testimony.

In *Stacy* v. *Stacy*, 175 Ark. 763, 300 S. W. 437, this court held (quoting headnote No. 8): "While it is necessary that proof to establish a resulting trust should be clear, satisfactory and convincing, it is not essential that it be undisputed."

In *Spencer* v. *Johnson*, 178 Ark. 1200, 13 S. W. 2d 585, in defining implied trusts, this court said: "Im-

plied trusts are those which are deducible from the transaction as a matter of intention, but not found in the words of the parties, or which are superinduced in the transaction by operation of law as a matter of equity independent of any particular intention of the parties.''

And in 65 C. J. 222, § 12, the author says: ''Express and implied trusts differ chiefly in that express trusts are created by the acts of the parties, while implied trusts are raised by operation of law, either to carry out a presumed intention of the parties or to satisfy the demands of justice or protect against fraud.''

We proceed now to look to the testimony as revealed in this record, to ascertain the intention of the parties here as to who should be the real beneficiary under the trust created. As has been indicated, there is no dispute but that George Brodie, Sr., at his death January 27, 1939, held the naked legal title to the land and that the equitable title remained in either appellant or appellee.

The presumption is that Brodie held this property in trust for the party, or parties, furnishing the purchase money. After a careful review of this record, we have reached the conclusion that the preponderance of the testimony establishes that the $16,750 furnished Brodie, with which the purchase of the land in question was made, was the joint money of appellant and appellee and, therefore, that he (Brodie) held the property in trust for appellant and appellee as joint beneficiaries.

The record discloses that the parties here accumulated nearly $20,000 in cash, which they kept concealed in a bookcase in their home; both had access to this money. While the divorce decree in 1935 settled property rights, the exact nature of this settlement does not appear. When appellee first went to appellant's home, she was a paid housekeeper until she and appellant were married.

When she returned to his home, at his earnest solicitation, in late 1935 or early 1936, she lived with him for three years thereafter in every sense of the word as his wife. This, appellant admits. During these three

years she not only performed all the duties of a house-wife, but she helped appellant with the operation and management of his farms.

In the autumn of 1936, appellant became gravely ill of high blood pressure and heart trouble and was confined in a hospital in Little Rock. A blood transfusion was necessary and appellee furnished the blood for that purpose. Thereafter through a long period of careful nursing on the part of appellee, appellant improved but did not recover.

They were devoted to each other and (quoting appellant's testimony): "Q. And for all purposes, even after you and Abbie were divorced in 1935, she was treated as your wife, was she not? A. I don't know how I could treat a wife any better. . . . A. She was grand while I was sick. You take this down, if it hadn't been for Abbie, I would be out here in the cemetery."

Appellee testified that appellant was more devoted to her after the divorce than before and that the $16,750 furnished her father, George Brodie, Sr., to purchase the land was their joint money which she had helped to earn, accumulate and save. Appellee was not paid as appellant's housekeeper after she returned to him subsequent to the divorce but assumed the role of a wife. During all this time appellant filed with the government a joint income tax return for himself and appellee and claimed deduction for the dependent daughter of appellee. Appellant displayed as much love and affection for this child as he would have for a child of his own.

This money was largely accumulated by the joint efforts of these parties from the products of the two farms and, as has been indicated, none of it was used to reduce the two mortgages above referred to. In fact, appellant and appellee concealed this money where it could not be reached by the mortgage-holders.

Having concluded that the land in question was purchased with the joint money of appellant and appellee and held in trust by George Brodie, Sr., for their benefit, does the testimony establish that it was the intention of

appellant and appellee that this property was so purchased and held for the benefit of appellee?

We think it does. George Brodie, Sr., acquired title to this land by deed from the commissioner following confirmation in the foreclosure sale in May, 1938. He died intestate January 27, 1939, while holding title to the property. While appellant testified that Brodie was holding the property in trust for his benefit and had agreed to convey it to him, yet at no time while Brodie held the title before his death, did appellant ask him for a deed although they were on the best of terms.

And at this point some significance may be given to the fact that on November 6, 1937, appellant conveyed to George Brodie, Sr., a tract of land in Illinois and the deed was recorded on the 8th. On the same day on which this deed was executed, November 6, 1937, appellant took back from George Brodie and his wife, deed conveying these lands to him (appellant), but this deed was not recorded until May 15, 1939.

On February 2, 1939, the widow of George Brodie, and his heirs, executed a warranty deed to the land in question to appellee, Abbie Hunt. It is undisputed that appellant assisted appellee in having this deed prepared, knew of its execution, had full knowledge of its contents, and actually solicited Mrs. M. L. Brodie, the widow, and two of the heirs, to sign the deed.

In the deed is the following clause: "Whereas, the said George Brodie, Sr., held the following described property in Arkansas county, Arkansas, in trust for the hereinafter named grantee and in keeping with said trust the said heirs desire to transfer the title to said property to its rightful owner."

This deed was prepared and executed in the office of an attorney, C. V. Holloway, in England, Arkansas, with the consent and acquiescence of appellant, delivered to appellee, Abbie Hunt, along with another deed to this same land executed by two heirs who had become of age since the execution of the deed, *supra,* and these deeds were turned over by Abbie Hunt to appellant to be placed in a safety deposit box in a bank.

After the death of George Brodie, appellant did not ask his widow, with whom he admits he was on friendly terms, or a single Brodie heir, to execute a deed to him to the property, but testified: "I assisted Abbie in getting her a deed from her stepmother (meaning the widow of George Brodie), to get her to sign a deed."

While appellant testified that when he induced Mrs. Brodie to sign the deed, in which appellee, Abbie Hunt, was named grantee, he explained to her that appellee had agreed to deed the property back to him, Mrs. Brodie specifically denied this. This contention was also denied by George Nelon, who was also present at the time.

It is not denied that during all the time appellant lived with appellee that he was estranged from his children and that they had left his home.

Appellant testified that during all conversations with George Brodie, relative to buying the land in question, no one was present except appellant, Mr. Brodie, and Abbie Hunt.

Abbie Hunt testified: "A. Before the foreclosure was consummated Mr. Hunt and I went over to my father's and Mr. Hunt asked my father to buy the small farm, the 320-acre farm, at this public sale, my father refused at first, and we went again and again several times to talk this over with my father and finally it was agreed between Harry Hunt and my father and myself that my father was to buy this farm in and he was to buy it in for me. Q. Now, Mrs. Hunt, prior to that understanding with your father, had the matter been discussed between you and Mr. Hunt? A. Yes, sir. Q. As to how it was to be purchased and for whom it was to be purchased? A. Yes, sir, because if you will remember in Harry's own deposition he says that my father and myself and himself made these agreements. . . ."

George Brodie, Sr., immediately after procuring deed to the land, took possession through a tenant who was then occupying the property under lease. Brodie executed a power of attorney to appellant to look after the property. However, appellant could not get along

138

with the tenant and Brodie revoked this power of attorney to appellant and executed power of attorney to appellee, Abbie Hunt, who then took over the management of the property and the collection of the rents.

We think the above testimony, and other evidence in the record of probative value, is sufficient and of that clear and satisfactory character necessary to establish a trust for the use and benefit of appellee, that she is entitled to have title to this land vested in her, and that the trial court did not err in so holding.

In 65 C. J. 955, § 882, the textwriter says: "A *cestui que trust,* or one claiming to be such, who is competent to act for himself, may be estopped, or waive his right, to enforce a trust in his favor by words or acts on his part which, expressly or by implication, show an intention to abandon, or not to rely upon or assert, such trust, as by acquiescing, with knowledge of all the material facts, in the alleged trustee's acts in dealing with, or disposing of, the property in a manner inconsistent with the existence or continuation of a trust, or by consenting to such an application or investment of the trust funds or property as to show an intention to abandon his right thereto. . . ."

No error appearing, the decree is affirmed.

McHANEY, J., disqualified and not participating.