William Lee WINTERS *v.* Brenda WINTERS, Guardian of the Estate of William Lee Winters

CA 87-267                                                747 S.W.2d 583

Court of Appeals of Arkansas
Division I
Opinion delivered March 30, 1988

*Howard & Howard*, by: *William B. Howard*, for appellant.

*Randall W. Ishmael*, for appellee.

GEORGE K. CRACRAFT, Judge. This is an appeal and cross-appeal from an order of the Craighead County Probate Court settling the final accounting of a guardian. We find no error and affirm.

Appellant, William Lee Winters, and appellee, Brenda Winters are husband and wife. They are also the parents of three children, who at all times pertinent to this action resided in the family residence in Jonesboro, Arkansas. In 1979, the appellant was accidentally injured by electrical shock, which affected his brain and memory to such an extent that he was unable to continue his practice of medicine. He then became entitled to receive approximately $6500.00 per month in accidental disability benefits, in addition to workers' compensation, social security, and income from substantial investments made during his years in the practice of medicine. The disability insurers insisted that payment be made only to a guardian of appellant's estate. On proper lay and medical proof, the probate court found appellant to be incompetent and appointed appellee his guardian.

For the years 1979-80 through 1982-83, the appellee filed annual accountings, copies of which were served on the appellant. In each of those years, the accountings were confirmed by the court without objection from appellant. From our examination of

these documents, it appears that the value of the estate was enhanced considerably during each of those years.

During January of 1984, marital problems arose causing a separation of the parties. Appellee and the children remained in the family residence and the appellant resided elsewhere. In May of 1984, the appellant petitioned the court for termination of the guardianship, restoration of his competency, and a final accounting by the guardian.

The court first held a hearing on the petition for restoration of competency at which a board-certified psychiatrist testified that he had first seen the appellant as early as 1982 and at that time found him to be fully competent to manage his property and care for himself. At that hearing, the appellant testified that for the "past two or three years" he had been in control of his estate even though he had a guardian. He stated that he became more and more involved with the management of his estate and that, as early as December of 1981, he assumed "the total function of the household and start[ed] directing funds at that point in time." He stated that from that time on he made the major financial decisions for "what is now still legally my present family." On this evidence, the probate court terminated the guardianship, restored appellant's competency, and directed the filing of a final accounting to which appellant filed a number of exceptions.[1] After a hearing, the probate court confirmed the account in its entirety, except as to a credit claimed by appellee for gifts to the minor children in the amount of $9000.00. Appellant appeals from the allowance of claims for credits of gifts to a church and other charities in the amount of $3,021.78, house repairs and remodeling in the amount of $12,250.00, cash for family expenses of $5,200.00, miscellaneous household and personal expenses of $5,075.37, and losses of $56,871.35 resulting from trading in securities.

At the hearing on the exceptions, the appellee agreed that the appellant had never been incapacitated, had conducted his own business affairs, and, in fact, had made all major financial

---

[1] Although appellant filed exceptions to the earlier accounts at the same time, the probate court ruled that they had become final under Ark. Stat. Ann. §§ 57-642, 62-2808, and 62-2810 (Repl. 1971). This appeal involves only the exceptions to the final accounting.

decisions during the term of her guardianship. She stated that she had never taken charge of the assets and had done only what he directed her to do during that period. Appellee stated with regard to the gifts to the church and other charities that those gifts had been made primarily to the Southwest Church of Christ. She stated she obtained no court order for those donations but had discussed the gifts with the appellant before they were made and that he had approved, authorized, and directed them. The record reflects that in previous accounting years the court had approved her gifts to the church in larger sums, without objection by the appellant. Appellee testified that they had been making plans for the remodeling of the home for several years prior to their separation, and appellant had taken a part in the development of those plans and had authorized them. Appellee stated that, although a major portion of the repairs were undertaken after the separation, she discussed it with the appellant and he told her to continue with the remodeling because it was the home in which his family would reside.

Appellee stated with regard to the $5,200.00 listed as "cash for family expenses" that she had assumed she was to take care of the family under the guardianship as had always been done in the past. She stated that the same was true of the items claimed as miscellaneous household and personal expenses. These sums were expended as living expenses for herself and the children as well as the appellant. She stated that she continued to make those expenditures after the appellant moved out of the house, but only at his direction. She also testified that the transaction which resulted in the loss of $56,000.00 in mutual fund certificates in Forty-Four Wall Street Pension and Profit Sharing plans was actually conducted by the appellant and that she had nothing to do with that transaction.

Although the appellant denied that he had given any instructions to appellee with regard to expenditures or investments either before or after the separation, the trial court expressly found:

> Here there is a Guardian-Ward relationship, they are married; the ward is legally responsible for support and maintenance of his Guardian and their three minor children; . . . the Ward had the ability to manage his property

and care for himself; that from 1982 on, *including the account period in question, the Ward did the major part of the financial decisions and solvency of his family*; the Ward opened and closed bank accounts, made deposits, wrote checks, transferred funds, conferred with his guardian on transactions and, in part, directed deposits, expenditures and trading. The Ward, in managing his property, forged his Guardian's name on more than one occasion.

In short, as he testified, during the accounting period in question, Dr. Winters was conducting business affairs and taking care, to a considerable extent, of his estate, even though he technically had a Guardian. All consistent with Dr. Price's testimony and Dr. Winters' testimony that during this period Dr. Winters had the ability to manage his property and care for himself.

(Emphasis added). On these findings, the court overruled all exceptions except the $9000.00 gift to the children and otherwise approved and confirmed the final accounting. The court further found that all other exceptions to the final accounting had been answered to the court's satisfaction "or the Court finds that the ward is estopped by his actions from raising them at this time."

██ Although probate cases are reviewed *de novo* on the record, we will not reverse the finding of the probate judge unless clearly erroneous. Ark. R. Civ. P. 52(a). At all times pertinent to this appeal, Ark. Stat. Ann. § 57-624(b) (Repl. 1971) provided that the law of trusts should apply to the duties and liabilities of the guardian of an estate. We agree that a trustee is held to a high standard of conduct in acting for the beneficiary and, in any instance where his interest conflicts with that of his beneficiary, is prohibited from taking advantage of his position to gain any benefit for himself at the expense of his beneficiary. However, the rule to apply to the facts as the probate court found them is recited in 90 C.J.S. *Trusts* § 429 (1955) (cited with approval in *Hunt* v. *Hunt*, 202 Ark. 130, 149 S.W.2d 932 (1941)) as follows:

A cestui que trust, or one claiming to be such, who is competent to act for himself may be estopped, or waive his right, to enforce a trust in his favor by words or acts on his part which, expressly or by implication, show an intention to abandon, or not to rely upon or assert, such trust, as by

acquiescing, with knowledge of all the material facts, in the alleged trustee's acts in dealing with, or disposing of, the property in a manner inconsistent with the existence or continuation of a trust, or by consenting to such an application or investment of the trust funds or property as to show an intention to abandon his right thereto. [Footnotes omitted.]

With regard to the claimed loss on investments, the rule is stated in 90 C.J.S. *Trusts* § 332 (1955), as follows: "A competent beneficiary who with full knowledge of his rights consents to, or acquiesces in, an improper investment by the trustee, cannot complain thereof or recover from the trustee for loss or depreciation in value of that investment." The probate court here found that the appellant had not only acquiesced in, but directed and participated in those actions of his guardian of which he now complains. We cannot conclude that this finding is clearly against a preponderance of the evidence.

Nor do we find merit in appellant's argument that the 1979 order of the probate court declaring appellant incompetent should dictate an opposite result. It is well established that a determination of incompetency at one point in time is only prima facie evidence that such incompetency continued thereafter. The presumption may be rebutted by proof to the contrary, and a person may establish that the actions of that person at a subsequent time were those of a fully competent person capable of transacting business in his own behalf. *Lester* v. *Pilkington*, 225 Ark. 349, 282 S.W.2d 590 (1955); *Brown* v. *State*, 219 Ark. 647, 243 S.W.2d 603 (1951); *Dew* v. *Requa*, 218 Ark. 911, 239 S.W.2d 603 (1951); *Eagle* v. *Peterson*, 136 Ark. 72, 206 S.W.55 (1918).

The appellant finally contends that the court should not have allowed the appellee's attorney a fee for defending the action. Arkansas Statutes Annotated § 57-861 (Supp. 1985) provides that the guardian may employ legal counsel in connection with the discharge of his duties, that the court shall fix the attorney's fee which will be allowed as an item of expense in the administration, and that, if the court finds the guardian has failed to discharge his duties, it may deny him any compensation whatsoever or reduce the compensation which would otherwise be

allowed. The appellant argues that this section does not authorize allowance of fees in favor of a guardian required to defend his actions as guardian and his accounting but offers no citation of authority or sound argument why it should not be applicable in cases where, as here, a guardian successfully defends a lengthy accounting for sums in excess of $500,000.00. The trial court is permitted to take into consideration any failures on the part of the guardian in the allowance of fees, and there is no indication in this case that it did not. The record in this case consists of five volumes, with over eight hundred pages of typewritten material and at least fifty pages of multi-item exhibits. The probate court was in a position to assess the value of counsel's service to the estate and to properly determine the amount of fees to which counsel should be entitled. We find no error.

On cross-appeal, appellee argues that the probate court erred in not allowing her gift of $9000.00 to the parties' children. Appellee admitted that she had no authorization from the appellant to make that payment in the accounting period 1983-84, and the appellant specifically denied having given any. The probate court concluded that that payment was unauthorized and unratified. We cannot conclude that this finding is clearly against the preponderance of the evidence.

Affirmed.

CORBIN, C.J., and JENNINGS, J., agree.