Harris J. BUCHBINDER, Personal Representative of the Estate of Barbara D. Blaisdell, Lyle B. Thompson, and Barbara Laney and David Thompson *v.* BANK OF AMERICA, N.A., as Trustee of the Trust Agreement of N.B. Dalton

99-1450                                           30 S.W.3d 707

Supreme Court of Arkansas
Opinion delivered November 9, 2000

*Shults Law Firm, LLP,* by: *Steven Shults* and *Reed R. Edwards,* for appellant Harris J. Buchbinder, Personal Representative of the Estate of Barbara D. Blaisdell.

*Charles J. Lincoln, P.A.,* by: *Charles J. Lincoln,* for appellant Lyle B. Thompson.

*Wright, Lindsey & Jennings LLP,* by: *David M. Powell, Charles L. Schlumberger, Judy Simmons Henry, & Stephen R. Lancaster,* for appellee Bank of America.

*Williams & Anderson LLP,* by: *Peter G. Kumpe* and *Stephen B. Niswanger,* for Barbara Laney and David Thompson.

L AVENSKI R. SMITH, Justice. Harris J. Buchbinder, as personal representative of the estate of Barbara D. Blaisdell, appeals a final order of the Pulaski County Chancery Court terminating trusts established in 1940 and 1941 by N.B. Dalton (also known as Barbara D. Blaisdell). Trustee Nations Bank (now Bank of America as successor trustee) commenced this action in Pulaski County Chancery Court by a Petition for Instruction, seeking assistance in administration, termination, and distribution of assets of the two trusts. Lyle Thompson (formerly Lyle B. Dalton) as personal representative of the estate and as an individual filed a counterclaim and third-party complaint. Subsequently, Buchbinder succeeded to representation of the estate when he replaced Lyle as personal representative. Buchbinder asserts the trial court erred when it denied the counterclaim for repayment of thirteen disbursements made by the trustee between 1982 and 1995 to Blaisdell upon her request. The trial court found that estoppel applied and prevented recovery.

Lyle also appeals but seeks reversal of the trial court's separate order holding him personally liable for $206,952.05 in attorney's fees and expenses to Bank of America. Barbara Laney and David Thompson came into this action as respondents to the Petition for Instruction as beneficiaries under the estate. On appeal, they assert there was no error in assessing attorney's fees and expenses against Lyle personally. We affirm the trial court's denial of the counterclaim although not on the basis of estoppel. We also affirm the trial court's order on attorney's fees and expenses.

*Facts*

Blaisdell (then N.B. Dalton) established two irrevocable trusts in 1940 and 1941 respectively with Union National Bank of Little Rock as trustee. The trusts' terms were identical except for the amount each was to pay each month. Under the terms of the trusts, the trustee would pay her the sum of $350.00 per month from the 1940 trust and $400.00 per month from the 1941 trust respectively. Blaisdell was both the settlor and the beneficiary of the trusts. The trusts listed several contingent beneficiaries including Lyle Thompson.

Pursuant to the terms of the trusts, Blaisdell could receive payment only if she requested it in writing in the prior month. In addition to the payment terms, the trusts also contained language giving Blaisdell authority to add additional principal to the trust at any time, control investment of the trust funds, and replace the trustee at her discretion. Blaisdell apparently received payment according to the trusts' terms throughout her life when she requested it. Upon her death, the trusts were to pay the same monthly sums to the listed contingent beneficiaries. The trusts did not include instructions for their termination. Only Lyle survived Blaisdell. It appears she declined payment for a number of years. However, between September 7, 1982, and May 3, 1995, Blaisdell, with Lyle's assistance, requested and was given thirteen separate disbursements greatly in excess of those allowed under the terms of the trust. The disbursements varied in amounts between $7,250.00 and $22,918.74. Blaisdell apparently used these disbursements to pay income taxes due on the trust funds.

Appellants asserted in their counterclaim that Lyle and Blaisdell were not entitled to the thirteen disbursements under the terms of the trusts because they exceeded the allowed disbursement amounts specified in the trusts. They allege these disbursements constituted breaches of the trusts' terms and obligate the trustee to pay the amount of the thirteen disbursements back into the trusts and to pay additional damages for related losses.

Lyle is a beneficiary of the estate and would benefit from an increase of assets in the estate upon the estate's disbursement. Lyle was Blaisdell's adopted son and is a CPA, holds an MBA, and was a certified financial advisor retained by Blaisdell. Testimony also showed Blaisdell was experienced in business and sought expert advice when making financial decisions. No evidence questioned Blaisdell's competency. Blaisdell died in Florida in 1996. The Florida probate court appointed Lyle personal representative of the estate. While in that capacity, Lyle brought suit in federal court in the Southern District of Georgia, federal court in the Western District of Arkansas, and finally in circuit court in Garland County, Arkansas. The suits all sought to compel the trustee to compensate the trusts for the amount of the thirteen payments he and Blaisdell received at their own request. They also sought recovery for damages arising from the trustee's failure to modify the trusts to provide for direction on who would direct investment upon Blaisdell's death

and for termination of the trusts. Finally, Lyle sought termination and distribution of trust assets to the estate. All of these cases were dismissed by Lyle or by the relevant court.

At trial, the trustee and estate introduced evidence of the trusts, their terms, and their operation over the years. At the conclusion of the trial, the chancellor found estoppel prevented recovery of the trust distributions in order to prevent a windfall to Lyle and the estate. Pursuant to the parties stipulation, the court modified and terminated the trusts.

## Standard of Review

We review chancery cases de novo on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Simmons First Bank v. Bob Callahan Servs., Inc.,* 340 Ark. 692, 13 S.W.3d 570 (2000); *Myrick v. Myrick,* 339 Ark. 1, 2 S.W.3d 60 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Similarly, we review issues of statutory construction de novo, as it is for this court to decide what a statute means. *Simmons First Bank, supra; Hodges v. Huckabee,* 338 Ark. 454, 995 S.W.2d 341 (1999). In this regard, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.; Stephens v. Arkansas School For The Blind,* 341 Ark. 939, 20 S.W.3d 397 (2000).

## Estoppel

The trial court found that the appellants were estopped from enforcing the trusts' terms against the trustee. Four elements are necessary to establish estoppel. They are: (1) the party to be estopped must know the facts; (2) the party to be estopped must intend that the conduct be acted on or must act so that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the facts; and (4) the party asserting the estoppel must rely on the other's conduct and be injured by that reliance. *City of Russellville v. Hodges,* 330 Ark. 716, 957 S.W.2d 690 (1997); *State v. Wallace,* 328 Ark. 183, 941

S.W.2d 430 (1997); *Foote's Dixie Dandy, Inc. v. McHenry,* 270 Ark. 816, 607 S.W.2d 323 (1980).

■ The first element is satisfied in the facts of this case. Blaisdell knew the terms of the trusts. She was the settlor and had the trust created to her satisfaction. Nonetheless, many years into the life of the trusts she sought disbursement of funds in amounts and at times not specified in the terms of the trusts. Also, Blaisdell sought the funds, and there was no reason to believe she, or her estate, would later assert the trustee should have refused her wishes and denied her the funds. The second element is, therefore, also met. The fourth element, injury, is also present in that the trustee would suffer the injury of reimbursing the trusts and paying damages suffered by the trusts due to the disbursements.

■ The third element, ignorance of the party seeking estoppel, however, is absent. The trustee argues that the third element was satisfied because it had no reason to know Blaisdell or her estate would withdraw her consent and assert a cause of action for breach of trust in order to receive the funds twice. The trustee was not ignorant of the facts but merely chose to act in response to the settlor's request rather than according to the terms of the trusts. However, the decision of the trial court may be affirmed on other grounds.

■ A trial court's decision can be sustained if the ultimate decision is right even if the basis for that decision was incorrect. Stated differently, this court may sustain the decision upon a different basis. *Viswanathan v. Mississippi County Community College Bd. of Trustees,* 318 Ark. 810, 887 S.W.2d 531 (1994); *McNair v. McNair,* 316 Ark. 299, 870 S.W.2d 756 (1994); *Morrison v. Lowe,* 274 Ark. 358, 625 S.W.2d 452 (1981). Further, we held in *Ferguson v. Green,* 266 Ark. 556, 587 S.W.2d 18 (1979), that the fact that the chancellor based his decision upon an erroneous conclusion does not preclude the appellate court's reviewing the entire case de novo and entering such judgment as the chancery court should have entered upon the undisputed facts in the record, *Rockefeller v. Rockefeller,* 335 Ark. 145, 980 S.W.2d 255 (1998).

## Consent

■ The facts show Blaisdell and Lyle specifically sought the funds from her trust, which the estate and Lyle now allege were disbursed in violation of the trust terms. Blaisdell as settlor knew the terms of her own trust. Her estate stands in her shoes and is bound by the limits of the rights she possessed during her life. *McDonald v. Pettus,* 337 Ark. 265, 988 S.W.2d 9 (1999). Additionally, Lyle Thompson testified he knew the terms of the trusts for many years, and he testified he was advising Blaisdell. Thus, it is apparent both Blaisdell and Lyle consciously sought the payments knowing such requests were contrary to terms of the trusts.

Appellants now contend that Blaisdell's and Lyle's requests or consent do not excuse the trustee's violation of the express terms of the trusts. They cite *Gantt v. Arkansas Power & Light Co.,* 194 Ark. 925, 109 S.W.2d 1291 (1937) and *Austin v. The Most Worshipful Grand Lodge F. & A. Masons,* 200 Ark. 726, 141 S.W.2d 7 (1940) for the general proposition that a trustee may not use estoppel or consent to excuse a breach of trust. However, both cases are distinguishable on their facts from the scenario present in the instant case. In *Gantt* the court neither announced nor followed a specific rule of trust law but instead applied a general equitable principle to prevent a governmental entity from forestalling legal rights of taxpayers through circumstances it helped create. In *Austin,* the principal issue dealt with the statute of limitations rather than consent or estoppel. The court cited *Gantt* approvingly for the proposition that neither laches nor estoppel could be interposed by the trustee. However, the instant facts differ markedly from any of the cases cited by appellant. In the case sub judice, we do not have acts of the trustee of which the beneficiary was ignorant, ignored, or acquiesced to. Rather, we have the trustee complying with direct, unequivocal requests of both the beneficiary and the only surviving contingent beneficiary.

Appellants also cite *Cotham v. First Nat'l Bank of Hot Springs,* 287 Ark. 167, 697 S.W.2d 101 (1985), and note that the legislature thereafter passed Ark. Code Ann. § 28-69-401 (Supp. 1999), which discusses consent. However, neither *Cotham* nor the statute are apposite. The issue in *Cotham* and in the statute is consent to revocation, modification or termination of a trust. In this case, we need not reach the issue of whether the parties ever attempted to

revoke, modify, or terminate the trust. From the evidence it is apparent that all the parties agree as to the terms of the agreement. The trustee does not contend that the parties actually modified the agreement. It instead argues that the beneficiaries's procurement of the trustee's disbursement constituted consent to those specific disbursements sufficient to deny on an equitable basis the beneficiary's recovery of the same from the trustee at a later date. They have not argued for a permanent modification of the trust agreement to some new terms which would implicate the statute. In fact, on appeal the bank has contended that the trust agreements were void from their inception as impermissible spendthrift trusts.

■ There simply has been no case quite like this one before Arkansas's appellate courts. Given the facts and the legal principles most closely applicable, we hold that the better result is to forbid recovery by the beneficiaries where the beneficiaries sought and received disbursement from the trust in excess of the amounts specified in the trust agreement. Consent of the settlor and beneficiaries under Ark. Code Ann. § 28-69-401 (Supp. 1999) is not to be confused with the equitable defense of consent by beneficiaries to alleged breach of the trust terms by the trustee. We think the principle contained in Section 216 of the Restatement of the Law, Trusts is sound. Section 216 states, "A beneficiary cannot hold a trustee liable for an act or omission of the trustee as a breach of trust if the beneficiary consented to it." Restatement of the Law, Trusts, § 216 (2nd Ed.1959).

■ In Arkansas, knowing consent to an act by a trustee by a competent beneficiary will waive that beneficiary's right to later bring an action against the trustee for the act. In *Hunt v. Hunt*, 202 Ark. 130, 149 S.W.2d 930 (1941), a tract of land was found to be held in constructive trust by the purchaser. The purchaser was George Brodie, the father of Abbie Hunt. The money Brodie used to purchase the tract was money Harry Hunt and Abbie had earned together as husband and wife. Thus, Brodie held the land for Harry and Abbie as a trustee of a constructive trust. Harry and Abbie later divorced and separated, but Abbie subsequently moved back in with him. Harry eventually indicated he wanted Abbie to have the tract of land. After Brodie's death, the Brodie family, then holding the land as constructive trustee, conveyed the tract to Abbie. Harry brought suit. The court cited 65 C.J. 955, §882, which provided that knowing acquiescence by a beneficiary of a trust to an act by

the trustee contrary to the terms of the trust waives the beneficiary's right to enforce the trust. Harry's consent precluded any action against the trustee. Here we have not only acquiescence to the acts of the trustee, we have actual demand of the acts which the beneficiaries now call into question. *Hunt* was cited in *Winters v. Winters,* 24 Ark. App. 29, 747 S.W.2d 583 (1988), where the court of appeals discussed actions by a guardian appointed for an incompetent. The court of appeals found the guardian was subject to the law of trusts, and that in spite of the trial court's contrary finding, the appellant was competent. The court of appeals also found that the appellant not only acquiesced in, but directed and participated in the investment decisions appellant complained of. The court of appeals found consent waived the appellant's right to enforce the trust duties waived by that consent. *See also, State Ex. Rel. Att. Gen. v. Van Buren Sch. Dt. #42,* 191 Ark. 1096, 89 S.W.2d 605 (1936) (wherein this court stated, equity will not relieve a beneficiary who has acquiesced in misconduct of the trustee.)

The principle that a competent beneficiary of a trust may not knowingly consent to a breach of the trust and then seek to hold the trustee liable is longstanding. In *Vreeland v. Van Horn,* 17 N.J. Eq. 137 (N.J.Ch. 1864), Chancellor Green of the New Jersey Chancery Court stated, "It does not lie in the mouth of the *cestui que trust,* while competent to judge of his own interest, to complain of acts as breaches of trust, which were occasioned by his own neglect or misrepresentation."

The law has not changed. Knowing consent by a competent beneficiary continues to bar an action by the beneficiary to enforce the terms of the trust. George Bogert, *The Law of Trusts and Trustees* § 941 (2nd Ed. 1995). In1936, the Supreme Court of Pennsylvania stated it was then well settled that a beneficiary who consents or affirms acts of the trustee cannot thereafter question the propriety of such conduct. *In re Strawbridge's Estate,* 322 Pa. 406, 185 A.2d 726 (1936). Other courts have also found consent bars suit by a beneficiary. [1]

---

[1] In *David v. Russo,* 119 Ill. App.3d 290, 456 N.E.2d 342 (1983), the issue was whether constructive trustees who had paid for repairs to real property under trust in violation of a court order requiring prior court approval before such expenditures could be held liable for the repair costs. The court held the plaintiffs, as beneficiaries, acquiesced in the breach by accepting the benefits the trustees conferred on the property and thereby relieved the trustees from liability. In *In re Willey's Trust,* 433 N.E.2d 1191(Ind. Ct. App. 1982), the

■ There is no issue as to Blaisdell or Lyle Thompson's competency. We hold the affirmative requests of Blaisdell and Lyle Thompson to the trustee bars their subsequent attempt to enforce the specific terms of the trusts. They cannot now complain that the trustee complied with their requests.

## Attorney's Fees

■ Lyle Thompson raises four issues with respect to the trial court's order assessing fees against him. However, we are unable to address the merits of those issues in that Lyle's notice of appeal was filed untimely. We note the court of appeals dismissed the appeal as to attorney's fees by its mandate issued April 5, 2000.

Affirmed.

GLAZE, J., concurs.

BROWN and IMBER, JJ., dissent.

TOM GLAZE, Justice, concurring. I concur. In my view, there is a simple reason for affirming the chancery court in this matter. As the trustee states, it appears clear that no trust ever existed. Even in jurisdictions where spendthrift trusts are permitted, it is against public policy to allow a settlor to create a spendthrift trust for her own benefit. *See* William F. Fratcher, *Scott on Trusts* § 156 (4th ed. 1987). The reason for this policy is that an owner of property should not be allowed to enjoy an interest in that property while at the same time preventing her creditors from reaching it. *Id. See, also, Restatement (Second) of Trusts* § 156; George G. Bogert, *The Law of Trusts and Trustees* § 223 (2d ed. 1992).

Also, in Arkansas, a spendthrift trust cannot be created without the settlor passing legal title and absolute control of the trust corpus to a trustee. *See Cotham v. First National Bank of Hot Springs*, 287 Ark. 167, 697 S.W.2d 101 (1985); *Clemenson v. Rebsamen*, 205 Ark. 123, 168 S.W.2d 195 (1943); *Bowlin v. Citizens Bank & Trust*

beneficiaries asserted the trustee had incorrectly listed tillable acreage in a rental agreement that resulted in a low rental value on a farm. The court found the beneficiaries had agreed to the rental amount, and that the rental agreement specified the lower acreage. The court stated, "[W]e do not think the Beneficiaries can now challenge the propriety of the rental agreement, which is in effect what their objection does, after approving the transaction."

*Co.*, 131 Ark. 97, 198 S.W. 288 (1917). Such control was not transferred in the attempt to create the trusts in this case. Instead, Ms. Blaisdell retained control of the trusts whereby she managed investments, controlled the flow of income from the trusts and even paid income taxes from the profits made from the trusts.

Because Ms. Blaisdell did not create valid trusts and did not provide for what was to happen to any residual amounts remaining in the trusts upon her death, the chancery court's decision to transfer the assets of the trusts back into her estate was correct. The court reached that decision by accepting the stipulation and agreement of all parties below that the trusts should be modified and terminated. The court modified the trusts to allow the trustee to purchase a lifetime annuity for appellant Thompson to be paid the $750 per month installments which were intended for any of the named beneficiaries surviving Ms. Blaisdell. The parties below stipulated that Thompson was the last surviving express beneficiary of the trusts. The court's order then would terminate the trusts and all residual of the trusts would create a resulting trust which would be transferred back into the estate for distribution to the residual devisees of Blaisdell's will, Barbara Laney and David Thompson. The chancery court was authorized by state law to accept just such a stipulated agreement to modify and terminate the trusts pursuant to Ark. Code Ann. §§ 28-69-401 and 28-69-402 (Supp. 1999). These statutes allow modification and termination of a trust and protect the trustee from liability provided that (1) all beneficiaries give written consent; (2) the court finds that the trust's purposes are not being fulfilled or are frustrated; (3) the court consents on behalf of a deceased settlor by finding that a general family benefit will accrue, and (4) a guardian *ad litem* appointed to represent any unnamed beneficiaries and the personal representative of the decedent's estate may rely on the accrual of a general, family benefit. *Id.* That appears to be what happened in this case. The chancery court specifically cited to these statutes in its order granting the modification and termination of the trusts, and, as to this point, none of the appellants dispute the validity of the modification and termination.

ROBERT L. BROWN, Justice, dissenting. The majority opinion draws a nice distinction between *consent* to action by the settlor and beneficiary of a trust under *Restatement of the Law, Trusts* § 216 and *modification* of a trust based on actions by the settlor and beneficiary under Ark. Code Ann. § 28-69-401(a)

(Supp. 1999). I do not agree that that distinction can be made in this case. Section 28-69-401(a) reads:

> By written consent of the settlor and all named beneficiaries of a trust or any part thereof, regardless of any spendthrift or similar protective provisions, such trust or part thereof may be revoked, modified, or terminated upon a finding by the court having jurisdiction over such trust, or otherwise being of competent jurisdiction, that the trust's purposes, as expressed in or implied by the circumstances surrounding the trust, as a result of circumstances not foreseen to the settlor are not effectively being fulfilled or are frustrated.

As the majority points out, our caselaw on this matter is sparse. Furthermore, I agree that *Cotham v. First National Bank of Hot Springs*, 287 Ark. 167, 697 S.W.2d 101 (1985), which dealt with an attempted termination of a spendthrift trust by the beneficiaries of the trust is not on all fours with the facts of this case.

The distributions to the beneficiary, Barbara Blaisdell, by the trustee/bank which exceeded the amounts to be distributed under the two trusts are these:

| Date | Amount | Source |
|------|--------|--------|
| 9/7/82 | $ 7,250 | 1941 Trust |
| 9/7/82 | 7,250 | 1940 Trust |
| 9/17/82 | 12,500 | 1940 Trust |
| 9/17/82 | 12,500 | 1941 Trust |
| 6/28/84 | 15,000 | 1941 Trust |
| 12/21/92 | 27,000 | 1940 Trust |
| 10/20/93 | 24,025 | 1940 Trust |
| 2/17/94 | 25,000 | 1941 Trust |
| 2/17/94 | 25,000 | 1940 Trust |
| 8/4/94 | 56,537 | 1940 Trust |
| 2/14/95 | 25,000 | 1940 Trust |
| 2/14/95 | 25,000 | 1941 Trust |
| 5/3/95 | 22,918.74 | 1941 Trust |
| TOTAL | $284,980.74 | |

Section 28-69-401 was codified following the enactment of Act 841 of 1989. Thus, with the exception of the payments made by the bank in 1982 and 1984, the distributions all occurred after Act 841 became law. The distribution on December 21, 1992, in

the amount of $27,000 amounted to a modification of the trust agreement, particularly in light of the previous unauthorized payments made in 1982 and 1984. Evidence of this modification continued over the course of four consecutive years (1992-1995) and involved significant sums of money. This evidences a regular course of conduct, and modification of an agreement may be proved by the course of conduct of the parties. 17A C.J.S. *Contracts* § 410 (1999). In my judgment, the repeated actions of the bank over consecutive years with the agreement of the settlor and life beneficiary amounted to a modification of the trust agreement without court approval as opposed to mere consent to unauthorized actions by the bank.

Act 841 establishes the policy of the State with regard to modifications of a trust agreement, and it was not complied with. While I recognize that the bank would be required to pay damages to the Blaisdell Estate for breach of trust, having previously paid like amounts to Ms. Blaisdell, the heirs of Ms. Blaisdell are entitled to this. To do otherwise is to disregard the express intent of the General Assembly as manifested by Act 841.

For these reasons, I respectfully dissent.

IMBER, J., joins.