## SIMMONS FIRST BANK of Arkansas *v.*
## BOB CALLAHAN SERVICES, INC.

99-181                                    13 S.W.3d 570

Supreme Court of Arkansas
Opinion delivered March 30, 2000
[Petition for rehearing denied May 11, 2000. * ]

---

* GLAZE, J., not participating.

*Peel & Simmons, P.A.,* by: *John R. Peel,* for appellant.

*James R. Wallace & Associates,* by: *James R. Wallace,* for appellee/cross-appellant.

DONALD L. CORBIN, Justice. This case involves an issue of first impression regarding the priority of liens as between a general contractor and a bank. Appellant Simmons First Bank of Arkansas (Simmons) appeals the judgment of the Pulaski County Chancery Court awarding $250,528.05, plus interest, from a foreclosure sale to Appellee Bob Callahan Services, Inc. (Callahan). There are four points on appeal and one point on cross-appeal. Resolution of these issues requires our interpretation of the laws regarding mechanics' and materialmen's liens. *See* Ark. Code Ann. §§ 18-44-101 to -135 (1987 and Supp. 1999). Our jurisdiction is thus pursuant to Ark. Sup. Ct. R. 1-2(b)(1) & (6). We reverse and remand on appeal, but affirm on cross-appeal.

The record reflects that Doyle and Barbara DeWoody purchased a health club in North Little Rock by warranty deed dated May 26, 1994. On October 26, 1995, the DeWoodys executed and delivered to Appellant Simmons, then doing business as First Bank of Arkansas, a mortgage on the health-club property in the amount of $1,200,000.00. The mortgage was recorded on October 27, 1995, and reflects that it was executed for "personal purposes." Sometime in late 1995, Appellee Callahan, a general contractor, entered into a contract with the DeWoodys to perform certain construction and remodeling to their health club. The first phase of the work was completed pursuant to a written contract dated November 30, 1995, which provided for a fixed fee of $135,403.34. The second phase of the work was completed on a cost-plus basis, whereby Callahan hired the necessary subcontractors, materialmen, and laborers to construct improvements to the building. Callahan began work on the second phase of construction on January 4, 1996, and the construction was completed on August 8, 1996. Callahan and its employees furnished materials and labor to the DeWoodys as the general contractor for the total price of $979,476.62. Over the course of the construction, Callahan received payments from the DeWoodys totaling $523,080.00, leaving an unpaid balance of $456,396.62. The DeWoodys subsequently defaulted in their obligations under the mortgage and filed for bankruptcy.

Callahan filed suit on August 30, 1996, to foreclose its materialmen's lien for the labor, materials, and services provided. Simmons filed a counterclaim, asserting that its mortgage was entitled to priority over Callahan's lien. The chancellor found that Calla-

han's lien had priority on the basis that the mortgage, although filed before the construction began, failed to put anyone on notice that it was executed for the purpose of funding the construction, as provided in section 18-44-110(b)(1). The chancellor found further that Callahan's lien was superior to the mortgage even though the improvements to the health club were not removable. Thus, the chancellor concluded that Callahan was entitled to foreclose on the DeWoodys' property to satisfy its lien. The property was purchased at foreclosure sale by Simmons for the sum of $1,225,000.00. The proceeds of the sale were distributed first to Callahan, in the amount of $250,528.05, and then to Simmons. This appeal followed.

■ ■ Simmons does not contest the validity of Callahan's lien, nor does it contest that the lien was properly perfected. The central point on appeal involves the chancellor's determination of the priority of the respective liens. We review chancery cases *de novo* on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999); *Western Foods, Inc. v. Weiss*, 338 Ark. 140, 992 S.W.2d 100 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Similarly, we review issues of statutory construction *de novo*, as it is for this court to decide what a statute means. *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999); *State v. Farm Credit Servs.*, 338 Ark. 322, 994 S.W.2d 453 (1999). In this respect, we are not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* With these standards in mind, we discuss the issue of priority of the liens.

Simmons argues that the chancellor erred in ruling that Callahan's lien had priority over its mortgage as to the entire health-club property.[1] Simmons asserts that when the General Assembly passed Act 1298 of 1995, thereby amending the law of materialmen's liens,

---

[1] It is not clear from the record how much land is at issue here. The record reflects, however, that the lien and the mortgage are coextensive, as both describe the property as: "Lot 9, Block 1, McCain Commercial Park Addition to the City of North Little Rock, Pulaski County, Arkansas."

it intended to provide priority of such liens only in situations where the constructed improvement is removable. In the event the improvement is not removable, Simmons argues, the entire property should be foreclosed upon with the sale being subject to any prior encumbrance on the property. In short, Simmons contends that under section 18-44-110(b) a materialmen's lien enjoys priority over a mortgage only insofar as the improvements are removable.

We construe lien statutes strictly, as they are a derogation to the common law. *BB & B Constr. Co. v. F.D.I.C.*, 316 Ark. 663, 875 S.W.2d 48 (1994). Strict construction means narrow construction and requires that nothing be taken as intended that is not clearly expressed. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998). The doctrine of strict construction is to use the plain meaning of the language employed. *Id.* Nevertheless, even when statutes are to be strictly construed, they must be construed in their entirety, harmonizing each subsection where possible. *Id.*

As amended by Act 1298, section 18-44-110(b)(1) provides:

> The liens for labor performed or materials or fixtures furnished, as provided for in this subchapter, *shall attach to the improvement* on which the labor was performed or the materials or fixtures were furnished *in preference to any encumbrance existing on the real estate prior to the commencement of construction or repair of the improvement.* In all cases where the prior encumbrance was given for the purpose of funding construction or repair of the improvement, that lien shall have priority over all liens given by this subchapter. [Emphasis added.]

It is clear from the plain language of this provision that the materialmen's lien attaches to the improvement and enjoys priority over all prior encumbrances on the real estate *except* those given for the purpose of funding the construction. Simmons concedes that the mortgage it held on the DeWoodys' property was not a construction mortgage as described in subsection (b)(1). Notwithstanding, Simmons contends that its mortgage retains priority over Callahan's lien because the improvements made to the DeWoodys' property are not removable. We disagree.

Prior to the 1995 amendments, the statutes provided that the improvement had to be removable for the materialmen's lien to

have priority over a prior encumbrance on the property. *See BB & B Constr. Co.*, 316 Ark. 663, 875 S.W.2d 48. Former section 18-44-130 provided that "[a]ny person enforcing the lien may have the *building, erection, or improvement* sold under execution, and the purchaser may *remove* it within a reasonable time after sale." (Emphasis added.) That section was repealed by Act 1298. As it stands now, section 18-44-110(b)(2) provides the means for enforcing materialmen's liens:

> The liens, as provided for in this subchapter, *shall be enforced by foreclosure*, as further provided for in this subchapter, and the property ordered sold *subject to the lien of the prior encumbrance* on the real estate. [Emphasis added.]

As can be seen from this language, there is no longer a requirement that the improvement be removable for the materialmen's lien to be enforced. This notion is further evident from the recommendations made by the legislative task force created by Act 970 of 1993.

Act 970 provided that the duty of the task force was to examine existing laws concerning materialmen's liens and to determine whether the public and the industry were adequately protected. In its Final Report, the task force recommended that the materialmen's lien "should generally be subordinate to encumbrances on the real estate which pre-date the improvement, *but have priority as to the improvement itself.*" *Final Report of the Arkansas Task Force on Materialmen's Lien and Bonding Notice Requirements*, at 11 (November 1994) (emphasis added). The task force recommended eliminating the requirement that the improvement be removable, as it concluded that removability was impossible in most cases. In its place, the task force urged the legislature to "authorize the lienholder to foreclose the lien and force a sale of the property subject to the prior encumbrance in those cases where removal of the improvement is impracticable." *Id.* at 12. Notably, there was no recommendation that the priority status of the materialmen's lien be *conditioned* on the removability of the improvement, as Simmons urges.

■ We thus reject Simmons's interpretation of Act 1298. Were we to accept its argument, we would be effectively rendering superfluous and meaningless the provision in section 18-44-110(b)(1) that the materialmen's lien *on the improvement* has preference over *any* prior encumbrance *other than* one given for the

purpose of funding the construction. There is simply no indication from that section that the priority of the materialmen's lien is dependent upon the improvement being removable. The question then is whether, practically speaking, the priority of the material-men's lien on the improvement may be enforced by foreclosure sale of the entire property. We conclude that the only way to adequately protect the competing interests is to require the chancery court to conduct a double appraisal of the property, determining the value of the property prior to construction of the improvement and the value of the property with the improvement.

This method is best illustrated by the case law of the Supreme Court of Alabama. Similar to our section 18-44-110, the statutory law of Alabama provided that as to the building or improvement, materialmen's liens were given priority over all other liens, mort-gages, or encumbrances, whether executed before or after construc-tion began.[2] *See Empire Home Loans, Inc. v. W.C. Bradley Co.*, 241 So. 2d 317 (Ala. 1970); *Baker Sand & Gravel Co. v. Rogers Plumbing & Heating Co.*, 154 So. 591 (Ala. 1934). Enforcement was also by means of foreclosure sale. *Id.* The dilemma faced by the Alabama court was how to adjust the proceeds of the sale in a way that gave the materialmen's lien priority as to the improvement while simul-taneously giving priority to the bank as to the real estate. The solution was to sell the entire property and distribute the proceeds in an equitable manner. The court held:

> On principle as well as the authority of our former decisions, we hold the court of equity has plenary power to mold its decrees in such form as to conserve the equities of all parties; and may, when a removal of the building would, in large measure, operate a destruction of the security, order a sale of the property as a whole, adjusting priorities in the proceeds on equitable principles.

*Id.* at 597 (citations omitted). We believe that this approach best implements our current statutory scheme.

Section 18-44-101 provides that every contractor who supplies labor, materials, or services shall have a lien upon the improvement and up to one acre of land, or to the extent of the number of acres

---

[2] Alabama law currently provides priority for materialmen's liens over other prior encumbrances only insofar as the improvement is removable. *See* Ala. Code § 35-11-211 (Repl. 1991).

upon which improvement has been made. Section 18-44-110(b)(1) provides that the materialmen's lien attaches only to the improvement, and thus enjoys priority over prior encumbrances on the property only as to the value of the improvement. Subsection (b)(2) provides that the means of enforcing a materialmen's lien is foreclosure of the entire property, subject to the prior encumbrance on the land. To give meaning to each of these provisions, the chancery court must determine the value of the improvement using the double-appraisal method.

■ Accordingly, we reverse and remand this matter to the chancery court to conduct a double-appraisal of the property, determining the value of the property both with and without the improvement. Pursuant to its plenary powers in equity matters, the chancellor shall then distribute the proceeds of the sale, first to Callahan for the value of the improvement and the remainder to Simmons. *See* Ark. Code Ann. § 16-13-304(a) & (c) (Repl. 1999); *Monette Road Imp. Dist. v. Dudley*, 144 Ark. 169, 222 S.W. 59 (1920). Because we reverse on this point, it is not necessary to reach the merits of the remaining points on appeal. We note, however, that our holding today should not be extended beyond the particular facts of this case, as we are mindful of certain situations, *i.e.*, where the mortgage on the property is not in default, that may require distinct analysis. We turn now to the point raised by Callahan on cross-appeal.

For its cross-appeal, Callahan argues that the chancellor erred in denying an award for (1) its direct payroll costs and (2) the amount of time spent on the construction job by Bob Callahan, individually. The order reflects that the chancellor did not award the requested payroll amount, $10,088.00, because there was insufficient evidence to show that the employees named actually performed the labor on the DeWoody project. The order also reflects that the amount requested for Bob Callahan's labor was not included in the award because the amount testified to was speculative. We cannot say that the chancellor's findings were clearly erroneous.

■ Regarding its direct payroll costs, Callahan has failed to sufficiently abstract the record on this issue. Specifically, Callahan has failed to abstract the individual time sheets that it claims indisputably show that the $10,088.00 payroll figure represents the

employees' time spent exclusively on the DeWoody project. Accordingly, we affirm the chancellor's ruling on this issue. It is the appellant's burden to abstract the record to demonstrate error, and this court will not go to the record to determine whether reversible error occurred. *McPeek v. White River Lodge Enters.*, 325 Ark. 68, 924 S.W.2d 456 (1996). Of course, the same rule applies to cross-appellants. *Id.*

We further conclude that it was not error to deny the labor claimed by Bob Callahan. At trial, Bob testified that he did not keep time sheets for his work. Rather, he stated that he called in his time to his office each day, and that his office staff would write down the information. He did not produce any such daily records made by his office staff. Instead, he introduced a summary sheet of his time, indicating that he had spent 623 hours on the DeWoody project at $35.00 per hour, for a total of $21,805.00. He admitted, however, that he had previously only requested payment of $9,467.50 for his labor on the job. Given his contradictory testimony, we cannot say that the chancellor erred in finding that the amount of labor expended by Bob on the project was speculative. We give due deference to the superior position of the chancellor to determine the credibility of witnesses and the weight to be accorded to their testimony. *Myrick*, 339 Ark. 1, 2 S.W.3d 60. We thus affirm the chancellor's ruling on this point.

Reversed and remanded on appeal; affirmed on cross-appeal.

GLAZE, J., not participating.