Donna STEPHENS and Ray Stewart *v.*
ARKANSAS SCHOOL FOR THE BLIND;
Mark Riable, Houston Nutt, William Payne,
Sharon Mazzanti, and Tommy Walker,
In Their Official and Individual Capacities

00-61                                              20 S.W.3d 397

Supreme Court of Arkansas
Opinion delivered July 7, 2000

*Alice S. Gray*, Chancellor;

*Mitchell, Blackstock, Barnes, Wagoner & Ivers*, by: *Clayton R. Blackstock*, for appellants.

*Mark Pryor*, Att'y Gen., by: *Patricia Van Ausdall Bell*, Ass't Att'y Gen., for appellees.

DONALD L. CORBIN, Justice. This case involves allegations of unjust discharge by Appellants Donna Stephens and Ray Stewart, two former teachers at the Arkansas School for the Blind (ASB). Appellees in this action are ASB and its individual Board members, Mark Riable, Houston Nutt, William Payne, Sharon Mazzanti, and Tommy Walker. Appellants[1] filed suit in the Pulaski County Chancery Court seeking a declaration that the Board was without authority to terminate their employment pursuant Ark. Code Ann. §§ 6-43-102 and -104 (Repl. 1999); they contended that only the superintendent had the authority to discharge employees. Appellants also sought a fair and impartial hearing before the Board regarding their discharge, as provided in Ark. Code Ann. § 6-43-210 (Repl. 1999). The chancellor found that the Board did not discharge the employees, but that it made a budgeting decision to eliminate altogether the positions filled by Appellants. The chancellor found that once the Board's decision caused Appellants' services to no longer be needed, the superintendent discharged them. The chancellor also denied Appellants' request for a hearing before the Board. Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(b)(1) & (6), as it presents issues of first impression requiring statutory interpretation. We find no error and affirm.

■■ We review chancery cases *de novo* on the record, but we do not reverse a finding of fact by the chancellor unless it is clearly erroneous. *Simmons First Bank v. Bob Callahan Servs., Inc.*, 340 Ark. 692, 13 S.W.3d 570 (2000); *Myrick v. Myrick*, 339 Ark. 1, 2 S.W.3d 60 (1999). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed. *Id.* Similarly, we review issues of statutory construction *de novo*, as it is for this court to decide what a statute means. *Simmons First Bank*, 340 Ark. 692, 13 S.W.3d 570; *Hodges v. Huckabee*, 338 Ark. 454, 995 S.W.2d 341 (1999). In this respect, we are

---

[1] A third plaintiff, Tina Maxey, took a voluntary nonsuit below.

not bound by the trial court's decision; however, in the absence of a showing that the trial court erred, its interpretation will be accepted as correct on appeal. *Id.* With this standard in mind, we review the facts of this case.

The record reflects that Appellant Ray Stewart was employed as ASB's recreational activity leader and Appellant Donna Stephens was employed as an English teacher for the sensory impaired. Appellants' positions were eliminated by the Board effective February 21, 1997. Prior to this time, there had been discussions in the state legislature about the possibility of combining some of the services for ASB and the Arkansas School for the Deaf. Additionally, various members of the legislature and the Governor's staff had voiced repeated concerns that ASB's staff needed to be reduced. A study conducted by the Bureau of Legislative Research, Personnel Review Section, recommended the elimination of numerous positions at the school. Additionally, two members of the legislature repeatedly told Board members and ASB's superintendent that the school needed to reduce its staff. According to the former superintendent, Dr. Ivan Terzieff, those two legislators were of the opinion that fourteen positions could be eliminated without affecting ASB's operations. The impression left with the Board and the superintendent was that if they did not take action to reduce the school's staff, the legislature would.

In January 1997, while Dr. Terzieff was superintendent, the Uniform Personnel Committee of the state legislature recommended that seven vacant positions be eliminated from ASB's staff. According to Ken Garner, Personnel Director of the Bureau of Legislative Research, the Committee withheld action because there was some level of resistance to the cuts from Dr. Terzieff. Shortly thereafter, however, the Board terminated Dr. Terzieff and replaced him with Jim Hill, who was the school's principal. Superintendent Hill was then charged by the Board to work with the state legislature in an attempt to reduce the school's personnel. Following the Board's instructions, Hill met with Garner. Garner did not direct which positions to eliminate; rather, he expected Hill to use his judgment as an administrator to pick the seven positions, whether they were filled or unfilled. Hill initially recommended the elimination of four unfilled positions and three filled positions, including those held by Appellants. Subsequently, Hill recommended the

elimination of an additional filled position, making a total of eight positions.

The minutes of the Board's February 20, 1997 meeting reflect that Board member Dr. Payne moved to eliminate eight positions: (1) Accountant; (2) Recreational Activity Leader Supervisor (the position held by Appellant Stewart); (3) Recreational Activity Leader II; (4) Administrative Assistant II; (5) Teacher III; (6) Teacher III; (7) Teacher III; and (8) Teacher IV (the position held by Appellant Stephens). Dr. Payne also moved that if his motion was approved, the personnel involved would be relieved of their responsibilities as of the end of the following workday. The motion was seconded, and the Board voted to eliminate the positions. As a result, Hill terminated Appellants the following day, with an additional thirty days' pay.

During the trial below, Appellants contended that the Board lacked statutory authority to discharge them and that, accordingly, it had acted *ultra vires* in doing so. They argued that only the superintendent has the power to discharge ASB employees, and that upon such discharge, the employees are entitled to a hearing before the Board to determine whether their terminations were just. Appellants sought relief in the form of a fair and impartial hearing regarding their discharges and a declaration that the Board had no authority to discharge any ASB employee. The chancellor denied the requested relief.

In a well-reasoned opinion, the chancellor found that the Board is charged by statute with the control and management of the school, and that the Board must exercise such powers of supervision and control that are not specifically reserved to the superintendent. *See* section 6-43-102(a) and (b)(1). On the other hand, the chancellor found that the superintendent is entrusted with the immediate control and management of the school. *See* Ark. Code Ann. § 6-43-103(a) (Repl. 1999). As part of the duty of immediate management, the superintendent has "the sole power to remove employees" of ASB and "may remove any employee at any time in [his] discretion for cause, but, in case of removal, he shall report the removal and the ground therefor to the board of trustees." Section 6-43-104(b).

The chancellor determined that in passing the foregoing provisions, the legislature intended that the Board be in charge of, control, and direct the overall school operations, but that the superintendent be responsible for the day-to-day immediate management of the school. The chancellor found that, in this case, the Board had presented valid management reasons to eliminate some staff positions and free those funds for other purposes. The chancellor found further that the Board's decision to eliminate these positions was a "budgeting decision," based on the Board's belief that the positions were no longer needed. The chancellor relied on section 6-43-210, which provides in part: "The teachers, officers, and employees shall perform such other duties as the superintendent may direct, *and when their services are not needed, they shall be discharged.*" (Emphasis added.) The chancellor reasoned that this provision was a specific determination by the legislature that ASB employees may be terminated when their positions are no longer needed.

Ultimately, the chancellor concluded:

> Although the General Assembly must vote to fund the School's budget, there is nothing in the statute to indicate the Board does not have the usual power of school boards to control development of its budget and determine priorities for funding. As such, the Board's decision to eliminate certain positions to free the money for other purposes is not *ultra vires*. The Board did not discharge the employees. The Board acted properly in making a budgeting and administrative decision which resulted in elimination of the Plaintiffs' positions. When the Board's decision caused the Plaintiffs' services to no longer be needed, the Superintendent determined which employees to terminate and followed through with those terminations.

The chancellor also concluded that Appellants were not entitled to a hearing under section 6-43-210, because they did not meet their burden of proof that they were unjustly discharged.

For reversal, Appellants argue that the Board lacked the authority to discharge them, and that the chancellor therefore erred in finding that the Board's actions were not beyond the scope of its powers. Appellants contend that only the superintendent may discharge employees, pursuant to section 6-43-104, and that upon his doing so, the discharged employees are entitled to a fair and

impartial hearing before the Board under section 6-43-210. Appellants assert that all employees discharged by the superintendent, for any reason, are entitled to such a hearing.

The Board, on the other hand, contends that its decision to eliminate the eight positions was a policy decision, going to the heart of its authority to manage the school. The Board submits that it is the legislature's intention, as evidenced by section 6-43-210, that it manage the school frugally and not staff positions that are no longer necessary. The Board asserts that its decision to eliminate the eight positions from the active-staff budget was based upon its belief that these positions could be eliminated with the least amount of damage to the educational purpose of the school. The Board points to the fact that Appellant Stewart's position merely pertained to after-school recreation, and that his duties could be performed by other staff members. Similarly, the Board points out that at the time of its decision, ASB had one math teacher, one science teacher, and three English teachers. Thus, the Board asserts that if a teacher's position was to be eliminated, an English teacher was a logical choice. Of the three English teachers, Appellant Stephens had the least seniority. In short, the Board contends that its decision to eliminate Appellants' positions did not amount to a discharge of individual employees for cause, such that it would infringe upon the power reserved solely to the superintendent under section 6-43-104. We agree.

The particular statutes at issue here have not been interpreted by this court. The basic rule of statutory construction is to give effect to the intent of the General Assembly. *Ford v. Keith*, 338 Ark. 487, 996 S.W.2d 20 (1999). In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id.* The statute must be construed so that no word is left void or superfluous and in such a way that meaning and effect is given to every word therein, if possible. *Id.* If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *Id.* Where the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.* (citing *State v. McLeod*, 318 Ark. 781, 888 S.W.2d 639

(1994)). Statutes relating to the same subject are said to be *in pari materia* and should be read in a harmonious manner, if possible. *Minnesota Mining & Mfg. v. Baker,* 337 Ark. 94, 989 S.W.2d 151 (1999). As stated above, we are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, we will accept that interpretation as correct on appeal. *Simmons First Bank,* 340 Ark. 692, 13 S.W.3d 570.

Before reviewing the relevant statutory provisions, we note that it is not contended that the Board lacked authority to eliminate the four unfilled positions. Such authority resides within the Board's statutory duties to manage and control the school, pursuant to section 6-43-102(a). The question then is whether the Board's decision to eliminate the four filled positions, in addition to the unfilled positions, is tantamount to a decision to discharge the individual employees filling those positions. In other words, does the fact that some of the positions were filled at the time of their elimination change the nature of the Board's actions, and, if so, did the Board exceed its authority in doing so?

Appellants contend that only the superintendent may discharge employees. Appellants are partly correct. Section 6-43-104(b) provides: "The superintendents shall have the sole power to remove employees of the respective schools *and may remove any employee at any time in their discretion for cause,* but, in case of removal, he shall report the removal and the ground therefor to the board of trustees." (Emphasis added.) Thus, the superintendent's power to discharge employees is limited to situations where there is cause for removal. Section 6-43-104(b) does not provide the superintendent with a *carte blanche* authority to discharge.

■ Conversely, section 6-43-210 provides:

> The teachers, officers and employees shall perform such other duties as the superintendent may direct, and *when their services are not needed,* they *shall* be discharged. *However,* if the teachers, officers, and employees are *unjustly discharged,* they shall be entitled to a fair and impartial hearing before the board of trustees. [Emphasis added.]

Construing this provision in its entirety and in conjunction with section 6-43-104(b), it is clear that the legislature envisioned two

different types of discharges. The first is the discharge of an employee whose services are no longer needed. This discharge is mandatory, as evidenced by the legislature's use of the word "shall." *See, e.g., State of Washington v. Thompson*, 339 Ark. 417, 6 S.W.3d 82 (1999); *Fulmer v. State*, 337 Ark. 177, 987 S.W.2d 700 (1999); *Loyd v. Knight*, 288 Ark. 474, 706 S.W.2d 393 (1986). The second type of discharge is that reserved to the superintendent in section 6-43-104(b) to remove any employee in his discretion for cause. It is this discretionary discharge that may trigger the hearing provided in section 6-43-210. Thus, employees who are mandatorily discharged because their services are no longer needed are not entitled to a hearing to determine whether they were "unjustly discharged." To interpret section 6-43-210 any other way would lead to an absurdity.

■ Here, the evidence supports the chancellor's finding that the Board's decision to eliminate Appellants' positions was due to the fact that they were no longer needed, and that the funds were needed to purchase computers and other technical supplies. It is of no consequence that the funds from Appellants' salaries could not automatically be used to purchase these supplies. What is significant for purposes of this appeal is that the Board determined that Appellants' positions were no longer needed and that the elimination of their positions would free up monies for the necessary supplies. Their discharges were thus of the mandatory type. As such, Appellants were not entitled to a hearing under section 6-43-210.

■ Given our conclusion that Appellants' discharges were mandatory, and not discretionary, the question then is whether it is the function of the superintendent or the Board to carry out such mandatory discharges. The answer to this question is not found in the language of section 6-43-210. Nevertheless, we may infer that because this power is not specifically reserved to the superintendent, it lies within the authority of the Board. Section 6-43-102(b)(1) provides that the Board "shall exercise such powers of supervision and control as are not specifically reserved to the superintendent." Section 6-43-104(b) only reserves to the superintendent the discretionary power to remove employees for cause. Accordingly, the authority to discharge an employee whose services are no longer needed resides with the Board, pursuant to section 6-43-102(b)(1). Moreover, this court has observed that "[t]he rule appears to be

well established that trustees have not only all powers specifically delegated, but such additional or implied powers that may be necessary to carry out the trust." *Lindsay v. White*, 212 Ark. 541, 551, 206 S.W.2d 762, 767 (1947). As the creation or elimination of a position is a function of the Board, it follows that the Board has the authority to determine whether a position is no longer needed. We thus affirm the chancellor's finding that the Board did not exceed its authority in eliminating Appellants' positions and causing them to be discharged.

Affirmed.