## Mildred MOORE *v.* PULASKI COUNTY SPECIAL SCHOOL DISTRICT

CA 00-978

43 S.W.3d 204

Court of Appeals of Arkansas
Division II
Opinion delivered May 2, 2001

*Mitchell, Blackstock, Barnes, Wagoner & Ivers,* by: Clayton R. Blackstock, for appellant.

*Skokos, Bequette & Billingsley, P.A* by: *Jay Bequette,* for appellee.

J OHN B. ROBBINS, Judge. This case began with a frightening incident involving a teacher, appellant Mildred Moore, at Northwood Junior High School, where she taught home economics. On December 4, 1996, appellant discovered in her iced tea glass and pitcher some rat poison and straight pins that an investigation revealed had been placed there by one or more students. In the following days, appellant attempted to continue working but was physically unable to do so. Her physician diagnosed her as having post-traumatic stress disorder, depression, anxiety, and hypertension as a direct result of the incident and predicted that she might be unable to work for one to four years. Appellant filed for workers' compensation benefits at the instruction of her school administration. After that claim was denied, she was told that there was no alternative to using her accumulated sick leave. After her sick leave was exhausted, shortly before the end of that school year, appellant was told that she had no choice but to retire. Her claim for disability retirement from the Arkansas Teacher Retirement System was approved in the spring of 1997.

Appellant sued appellee Pulaski County Special School District in 1998, asserting that, under Ark. Code Ann. § 6-17-1209 (Repl. 1999), appellee should have given her a year's paid leave of absence from work. That statute provides:

(a)(1)(A) Whenever a schoolteacher is absent from his or her duties in a public school as a result of personal injury caused by either an assault or a criminal act committed against the teacher in the course of his or her employment, the teacher shall be granted a leave of absence from school with full pay for up to one (1) year from the date of the injury.

(B) Teachers who suffer personal injury while intervening in student fights, restraining a student or protecting a student from harm shall be considered to be injured as a result of an assault or a criminal act.

(2) The leave of absence for personal injury from an assault or a criminal act shall not be charged to the teacher's sick leave authorized under this subchapter.

(b) The board of directors of each school district shall adopt written policies for the implementation of this section and incorporate them as part of the written personnel policies of the district.

Appellant also argued that her absence should not have been charged against her accumulated sick leave.

Appellee resisted her claim on several grounds: that appellant did not suffer a personal injury; that the statute did not provide a private cause of action; that appellant waived the rights provided under this statute; that the court lacked subject-matter jurisdiction; and that appellant failed to exhaust her administrative remedies.

The circuit judge found that appellant had sustained a personal injury within the terms of Ark. Code Ann. § 6-17-1209 and that she had not waived her rights under that statute. He rejected appellant's argument that, under the collateral source rule, her disability retirement income should not be deducted from the award. The circuit judge entered an order awarding appellant judgment for the paid leave of absence that appellee should have given her and for her accrued sick leave ($47,854.49), less the amount of disability retirement income ($21,197.22) she had received during the relevant time period, resulting in a total award of $26,657.27.

Appellant argues on appeal that the circuit judge erred in deducting her disability retirement income from her award against appellee because it is a collateral source. For its cross-appeal, appellee asserts that the trial judge erred in granting appellant any relief under Ark. Code Ann. § 6-17-1209 and in including her sick leave in the award. It necessarily follows, therefore, that we must address appellee's first point on its cross-appeal before turning to the other issues.

### Appellant's Rights Under
### Ark. Code Ann. § 6-17-1209

Appellee contends that Ark. Code Ann. § 6-17-1209 does not provide a private right of action and simply requires school districts to incorporate its terms into their written personnel policies. Under Ark. Code Ann. § 6-17-201 (1999), school districts must implement written personnel policies but, according to Ark. Code Ann. § 6-17-202 (1999), are exempt from this requirement if they have chosen to recognize a bargaining unit for the teachers ·in that district. Appellee recognizes the Pulaski Association of Classroom Teachers as the exclusive bargaining agent for its teachers; their Professional Negotiations Agreement (hereafter "PNA") sets forth their respective obligations. Appellee argues that, although the leave required by section 6-17-1209 was not addressed in the PNA, the

PNA sufficiently included it within a savings clause, which stated: "The parties agree that state and federal statutes and court orders are incorporated into this Agreement."

■■ In considering the meaning of a statute, we consider it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Stephens v. Arkansas Sch. for the Blind*, 341 Ark. 939, 20 S.W.3d 397 (2000). If the language of a statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to rules of statutory interpretation. *Id.* Where the meaning is not clear, the court looks to the language of the statute, the subject matter, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. *Id.* We will also look to the object to be accomplished and the purpose to be served by the statute. *Burford Distrib., Inc. v. Starr*, 341 Ark. 914, 20 S.W.3d 363 (2000). Although we are not bound by the decision of the trial court, in the absence of a showing that the trial court erred in its interpretation of the law, we will accept that interpretation as correct on appeal. *Stephens v. Ark. Sch. for the Blind, supra.*

■■ Appellee has cited no case, nor have we found any, supporting its argument that the general savings clause in the PNA was sufficient to comply with the statute's express directive that school districts incorporate its rights within the terms of their written personnel policies. Indeed, it seems obvious to us that subsection (b) would be meaningless if we were to follow appellee's argument. We will not interpret a statute in a manner so as to reach an absurd conclusion that is contrary to legislative intent. *Moses v. State*, 72 Ark. App. 357, 39 S.W.3d 459 (2001). Similarly, it would be absurd to conclude that the statute does not give a teacher a private right of action.

■ Appellee also argues that the trial court should have rejected appellant's claim because she did not request this statutory leave while she was still employed by appellee. Again, we disagree. Appellant asked appellee if there was any alternative to using her accumulated sick leave and was informed that there was none. It is clear, therefore, that appellee breached its obligation to provide appellant with the statutory leave while she was still an employee and that appellant would not have taken retirement when she did if appellee had satisfied its statutory obligation to her.

■ We also must reject appellee's assertion that appellant's claim should have been denied because she failed to exhaust her

administrative remedies set forth in the PNA. Although the PNA provided a grievance procedure for matters included within its terms, it did not include the rights provided by section 6-17-1209. Therefore, no administrative remedy covering these rights was available to appellant.

■■ We next turn to appellee's contention that appellant did not sustain a "personal injury" as contemplated by section 6-17-1209. Appellee urges us to hold that the General Assembly intended that this term be defined as narrowly as the term "compensable injury" is in the Workers' Compensation Act. Arkansas Code Annotated § 11-9-113(a)(1) (Repl. 1996) provides that a mental injury is not a compensable injury unless it is caused by physical injury to the employee's body; however, that physical injury limitation does not apply to any victim of a crime of violence. We are obliged to strictly construe and apply the Workers' Compensation Act. Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996); *Flowers v. Norman Oaks Constr. Co.*, 341 Ark. 474, 17 S.W.3d 472 (2000); *Byars Constr. Co. v. Byars*, 72 Ark. App. 158, 34 S.W.3d 797 (2000). We are under no such constraints, however, regarding section 6-17-1209, which is an entirely separate and unrelated statute. Appellant testified that, as a result of this incident, she developed hypertension that caused her to "pass out," in addition to depression, post-traumatic stress disorder, anxiety, and mental confusion. Given appellant's evidence of the effects that this incident had on her, we have no hesitation in holding that she sustained a personal injury within the meaning of section 6-17-1209.

*Jurisdiction*

■■ Appellee also argues that the circuit court had no subject-matter jurisdiction to hear this case. According to appellee, appellant essentially asked the circuit court to rescind her resignation, reform her previous election of sick leave to that provided by section 6-17-1209, and reinstate her sick-leave benefits. We disagree. The question of subject-matter jurisdiction is determined by the characterization of the case. *Priest v. Polk*, 322 Ark. 673, 912 S.W.2d 902 (1995). In her complaint, appellant alleged that appellee's failure to comply with section 6-17-1209 constituted a breach of her employment contract with appellee. Clearly, the circuit court had subject-matter jurisdiction of this action.

*Waiver*

 Appellee further argues that appellant waived any right to recover damages under section 6-17-1209 because she voluntarily resigned from her employment. Again, we must disagree. Waiver is the voluntary abandonment or surrender by a capable person of a right known by him to exist, with the intent that he shall forever be deprived of its benefits. *Pearson v. Hendrickson*, 336 Ark. 12, 983 S.W.2d 419 (1999). It may occur when one, with full knowledge of material facts, does something that is inconsistent with the right or his intention to rely upon that right. *Id.* The relinquishment of the right must be intentional. In *Lester v. Mount Vernon-Enola Sch. Dist.*, 323 Ark. 728, 732, 917 S.W.2d 540, 542 (1996), the supreme court explained: "In every case of which we are aware, we have held that a waiver of a right requires knowledge of that right on the part of the party who waived it." Whether a waiver occurred is a question of intent, which is usually a question of fact. *Beal Bank, S.S.B. v. Thornton*, 70 Ark. App. 336, 19 S.W.3d 48 (2000). We will not reverse a circuit judge's finding of fact unless it is clearly erroneous or clearly against the preponderance of the evidence. *Foundation Telecom. v. Moe Studio, Inc.*, 341 Ark. 231, 16 S.W.3d 531 (2000). The evidence in this case reveals that appellant had no knowledge of her rights under section 6-17-1209 until long after she had used up her sick leave and had taken disability retirement. It is equally clear that appellee took no action to inform appellant of those rights. The circuit judge's finding that appellant did not waive her statutory rights is not clearly erroneous or clearly against the preponderance of the evidence.

*The Collateral-Source Rule*

 We now return to appellant's point on appeal, that the trial court's deduction of her disability retirement income from the award violated the collateral-source rule. The collateral-source rule provides that benefits received by a plaintiff from a source that is wholly independent of and collateral to the defendant does not reduce the damages recoverable for the defendant. It is generally held that recoveries from collateral sources do not redound to the benefit of a tortfeasor, even though double recovery for the same damage by the injured party may result. *Bell v. Estate of Bell*, 318 Ark. 483, 885 S.W.2d 877 (1994). This rule, which has long been applied in the context of tort cases, has also been applied in other types of actions. *Id.*

As a general rule, benefits received by the plaintiff from a source collateral to the tortfeasor or contract breacher may not be used to reduce the defendant's liability for damages. This rule holds even though the benefits are payable to the plaintiff because of the defendant's actionable conduct and even though the benefits are measured by the plaintiff's losses.

. . . .

The arguments for the collateral-source rule are that it preserves the rights of subrogation for those who have aided the plaintiff; that in the case of a gift to the injured plaintiff, the gift was intended for him, not for the defendant, who should not, therefore get credit for it by a reduction in his damages; and that in the case of insurance paid for by the plaintiff, or job benefits bargained for by him, the benefit is one paid for by the plaintiff in the form of premiums or reduced salary scale, and that the defendant cannot reasonably claim any credit for something the plaintiff has bought.

Dan B. Dobbs, *The Law of Remedies* § 3.6, at 185-86 (1973).

As appellant points out, teacher retirement disability payments are not paid by the school district, but by a third party — the Arkansas Teacher Retirement System (hereafter "ATRS").[1] Appellant argues that appellee should not benefit from ATRS's payments to her, and we agree.

 In the context of employment cases, an award of back pay cannot be reduced by unemployment compensation benefits because they are considered a collateral source. *Green Forest Pub. Schs. v. Herrington*, 287 Ark. 43, 696 S.W.2d 714 (1985). On the other hand, in *Western Grove School District v. Strain*, 288 Ark. 507, 707 S.W.2d 306 (1986), the supreme court affirmed a teacher's obligation to obtain other employment in mitigation of damages following the nonrenewal of her contract. We followed that case in *Marshall School District v. Hill*, 56 Ark. App. 134, 939 S.W.2d 319 (1997), and held that the collateral-source rule has no application to employment breach-of-contract cases where the dismissed employee has subsequently earned income from other employment. In so

---

[1] After the circuit judge issued a letter opinion, but before the entry of judgment, appellant proffered the affidavit of Michael Ray, manager of benefits for the ATRS, stating that, when a teacher receives an award of back pay after drawing retirement, the ATRS seeks a refund of those amounts paid to the teacher.

holding, we based our decision on the employee's duty to take reasonable steps to mitigate his damages.

■ In our view, the case before us bears more resemblance to *Green Forest Public Schools v. Herrington* than it does to *Marshall School District v. Hill* because appellant clearly lacked the ability to work at all, much less obtain other employment. We therefore hold that the circuit judge erred in deducting appellant's retirement disability pay from her award and reverse and remand on this point for the trial judge to enter a judgment consistent with this opinion.

### The Award of Sick Leave

■ ■ Appellee also argues that appellant should not have been awarded her sick leave because she had no contractual right to be paid for unused sick leave at the end of her contract. Appellee misses the point, however, of the basis for this award — if appellee had given appellant the statutory leave of absence, appellant would then have used her accumulated sick leave to continue her employment and would not have retired until after her sick leave was exhausted. This award, therefore, is consistent with the basic purpose of an award of damages. A party to a contract who is injured by its breach is entitled to compensation for the injury sustained and is entitled to be placed, insofar as this can be done with money, in the same position she would have occupied if the contract had been performed. *Carroll v. Jones*, 237 Ark. 361, 373 S.W.2d 132 (1963). *Accord Dawson v. Temps Plus, Inc.*, 337 Ark. 247, 987 S.W.2d 722 (1999).

Reversed and remanded on direct appeal; affirmed on cross-appeal.

VAUGHT and CRABTREE, JJ., agree.