Charles L. Robinson, C.P.A, C.F.E. Legislative Auditor 172 State Capitol Little Rock, AR 72201-1099
Dear Mr. Robinson:
I am writing in response to your request for my official opinion on the following questions:
 1. Does the Arkansas State Board of Education ("ASBE") have the authority to exempt charter schools from provisions of Title 6, or any other provision of the Arkansas Code, where the Code states that such provisions shall apply to charter schools?
 2. May the ASBE exempt charter schools from provisions of Arkansas law or ASBE rules and regulations that generally apply to public schools, if charter schools are not specifically mentioned in the law?
 3. Is it permissible for charter school board members, administrators, or employees to be directly or indirectly interested in contracts (other than employment contracts) with a charter school?
 4. Where administrators or personnel for charter schools are contracted through, or paid by, another organization, may those administrators or school personnel be interested directly or indirectly in contracts with the charter school, or obtain benefits from contracts the charter school may have with the entity paying the salaries of the administrators or school personnel?
 5. Are charter schools subject to the provisions of Act 1599 of 1999 [sic: 2001] (A.C.A. 6-24-101 et seq.)?
 6. Under the provisions of Act 1599 of 1999 [sic: 2001], or any other law, may a board member, administrator, or employee of a charter school be directly or indirectly interested in contracts or profits of a nonprofit or for-profit corporation that contracts with, or provides services to, the charter school?
You recite the following background information:
 The Arkansas Department of Education, using a federal grant, agreed to begin an on-line school pilot program through the existing public schools utilizing the services of the Arkansas Virtual School L.L.C. The Virtual School is a wholly owned subsidiary of K12 Incorporated, a private, for-profit corporation.
 In order to become eligible for state funding, like any other public school, the Virtual School planned to become an open-enrollment charter school by forming the Arkansas Virtual Academy. The Academy charter was approved by the Arkansas State Board of Education on October 13, 2003, and signed by the Board's Chair on January 28, 2004.
 The administration of the Virtual School and the Virtual Academy are the same personnel, which are employees of K12 Incorporated.
 Upon review by the Legislative Joint Auditing Committee, the Committee noted that the Arkansas State Board of Education had exempted the Virtual Academy from Arkansas laws relating to soliciting bids for purchases, conditions for obtaining instructional material, the inability of public school officials to have an interest in profits, and the inability of the administration to enter into a contract with the organization that employees [sic] them.
 It appears that the State Board of Education relied on the provisions of A.C.A § 6-23-302, relating to open-enrollment charter schools, in exempting the Virtual Academy from provisions of certain Arkansas laws and regulations.
 The Legislative Joint Auditing Committee questioned the ability of the State Board of Education to exempt charter schools from provisions of Arkansas Code, particularly those sections where the General Assembly has specifically stated that the provisions apply to charter schools.
Before addressing your specific questions, I will note that they would appear to be moot with respect to the Virtual Academy, given the following legislative enactment:
 Regardless of any provision of any law to the contrary, the Department of Education shall fund from state monies only those charter schools which provide education services in a traditional public school setting and, if the internet or long-distance learning technology is used, the internet or long-distance learning technology is used as a supplement to the school's traditional classroom setting.
Act 77 of 2003, § 8 (2d Ex. Sess.).
RESPONSE
With respect to your first question, A.C.A § 6-23-103(1) authorizes the ASBE to exempt charter schools "from the provisions of § 6-1-101 et seq.
specified in the contract." Accord A.C.A § 6-23-302(c)(4). However, the Code clearly envisions that a charter will be "a performance-based contract" calling for "conditional operation" of such schools as public institutions. A.C.A § 6-23-103(1). In accordance with these conditions, I do not believe the ASBE may exempt charter schools from the operation of statutes that expressly address the operation of charter schools. Nevertheless, legislative clarification on this issue appears warranted. I believe the answer to your second question is "yes." A.C.A §§6-23-103(1) and 6-23-302(c)(4). With respect to your third question, title 6, chapter 24 of the Code generally bars such transactions, although it allows for exceptions "in unusual and limited circumstances."See, e.g., A.C.A § 6-24-105(a) (reciting this exception for board members.) I am unable to opine as to whether a school's charter status in itself would qualify as an "unusual and limited" circumstance. With respect to your fourth question, regardless of how they are paid, I believe that so long as charter school administrators or personnel are engaged in performing the school's obligations under its charter, they will be subject to the ethical restrictions set forth in title 6, chapter 24 of the Code. With respect to your fifth question, I believe charter schools are subject to the ethical provisions of Act 1599 of 2001. With respect to your sixth question, I believe title 6, chapter 24 sets forth the circumstances under which a board member, administrator or employee of a charter school might have a direct or indirect interest in contracts or profits of a nonprofit or for-profit corporation.
Question 1: Does the Arkansas State Board of Education ("ASBE") have theauthority to exempt charter schools from provisions of Title 6, or anyother provision of the Arkansas Code, where the Code states that suchprovisions shall apply to charter schools?
In my opinion, the answer to this question is, in all likelihood, "no."
The Code contains the following statement of legislative intent regarding the creation of charter schools:
 It is the intent of the General Assembly, by this chapter, to provide opportunities for teachers, parents, pupils, and community members to establish and maintain public schools that operate independently from the existing structure of local school districts as a method to accomplish the following:
(1) Improve student learning;
 (2) Increase learning opportunities for all students, with special emphasis on expanded learning experiences for students who are identified as low-achieving;
(3) Encourage the use of different and innovative teaching methods;
 (4) Create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the school site;
 (5) Provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system; and
 (6) Hold the schools established under this chapter accountable for meeting measurable student achievement standards.
A.C.A § 6-23-102 (Repl. 1999). As this statute reflects, the purpose of charter schools is to encourage flexibility and innovation in education. In support of this goal, the legislature has authorized the ASBE to exempt charter schools from statutory and regulatory restrictions generally applicable to public schools. A.C.A §§ 6-23-103(1) and -104 (Repl. 1999).
Your factual recitation indicates that your inquiry focuses on the status of an "open-enrollment charter school,"[1] which the Code defines as "a public school that is operating under the terms of a charter granted by the state board on the application of an eligible entity[2] and may draw its students from across public school district boundaries." A.C.A § 6-23-103(5). The Code defines the term "charter" as follows:
 "Charter" means a performance-based contract for an initial three-year period that converts a public school to a charter school or authorizes the creation and conditional operation of an open-enrollment charter school, which exempts the charter school from state and local rules, regulations, policies, and procedures specified in the contract and from the provisions of § 6-1-101 et seq. specified in the contract[.]
A.C.A § 6-23-103(1).
As I understand your question, you are asking whether the ASBE's power to exempt charter schools from statutory and regulatory restrictions includes the power to exempt such schools from restrictions that are expressly identified in the Code as applying to charter schools.[3] In effect, you are asking whether the statutory definition of "charter" invests the ASBE with such discretion that it might waive any and all laws and regulations that would otherwise apply to charter schools, including ASBE's own statutory oversight and testing obligations. Although this conclusion might seem appropriate given the legislature's wholesale references in A.C.A §§ 6-23-103(1) and -302(c)(4) to "§ 6-1-101et seq." as defining the universe of potential exemptions, I believe the answer to this question is "no."
In offering this opinion, I am guided by various principles of statutory interpretation. As the Arkansas Supreme Court reaffirmed in MississippiRiver Transmission Corp. v. Weiss, 347 Ark. 543, 550, 65 S.W.3d 867
(2002):
 The first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. Raley v. Wagner, 346 Ark. 234, 57 S.W.3d 683 (2001); Dunklin v. Ramsay, 328 Ark. 263, 944 S.W.2d 76 (1997).
 When the language of a statute is plain and unambiguous, there is no need to resort to rules of statutory construction. Stephens v. Arkansas Sch. for the Blind, 341 Ark. 939, 20 S.W.3d 397 (2000); Burcham v. City of Van Buren, 330 Ark. 451, 954 S.W.2d 266 (1997). When the meaning is not clear, we look to the language of the statute, the subject matter, the object to be accomplished, the purpose to be served, the remedy provided, the legislative history, and other appropriate means that shed light on the subject. Stephens v. Arkansas Sch. for the Blind, supra (citing State v. McLeod, 318 Ark. 781, 888 S.W.2d 639 (1994)). The basic rule of statutory construction is to give effect to the intent of the General Assembly. Ford v. Keith, 338 Ark. 487, 996 S.W.2d 20 (1999); Kildow v. Baldwin Piano Organ, 333 Ark. 335, 969 S.W.2d 190 (1998).
As the Arkansas Court of Appeals further noted in Southwestern BellTelephone Co. v. Arkansas Public Service Commission, 69 Ark. App. 323,333, 13 S.W.3d 197(2000):
 In determining the intent of the legislature, this court must look at the whole act and, as far as practicable, give effect to every part, reconciling provisions to make them consistent, harmonious, and sensible. Brandon v. Arkansas Pub. Serv. Comm'n, 67 Ark. App. 140, 992 S.W.2d 834 (1999). This court not only looks at the language of the statute but also its subject matter, the object to be accomplished by the statute, the purpose to be served, and other appropriate matters. Id.
In the present case, I believe the passing reference to the whole of title 6 in A.C.A § 6-23-103(1) as offering potential exemptions must be read in the context of the entire statute. As reflected in the statutory definition quoted above, a "charter" is not a contract into which the ASBE can negotiate any exemptions it chooses; rather, it is "aperformance-based contract" that authorizes only "conditional" operation of a school under relaxed regulation, and only then for a limited period of time. Id. (emphasis added); see A.C.A §§ 6-23-202 and -303 (providing that a petition for an open-enrollment charter school should be approved only if the charter contains rigorous conditions to ensure academic achievement). Subsection 6-23-306(3) further provides that "continuation or renewal of the charter is contingent on acceptable student performance on assessment instruments adopted by the State Board of Education and on compliance with any accountability provision specified by the charter, by a deadline, or at intervals specified by the charter." Section 6-23-404
further sets forth a detailed checklist of elements the ASBE will consider in annual evaluations of open-enrollment charter schools. In my opinion, the legislature intended that the "conditional operation of an open-enrollment charter school" referenced in the statutory definition of "charter," A.C.A § 6-23-103(1), be subject both to the conditions set forth in the statutes expressly authorizing and controlling the operation of charter schools and to those conditions generally applicable to public schools if the ASBE does not elect to exempt those conditions in a particular charter. To conclude otherwise would lead to the absurd result that the ASBE could effectively release a charter school from any regulation whatsoever.
The court has held that in determining legislative intent in order to construe an act, the reason and spirit of the act should take precedence over the letter of the act, where adherence to the letter of the act would result in an absurdity or would defeat the plain purpose of the law. Williams v. City of Pine Bluff, 284 Ark. 551, 683 S.W.2d 923
(1985). In this case, notwithstanding the legislature's blanket reference to title 6 as subject to exemption by the ASBE, I do not believe the legislature intended to allow the ASBE to remove charter schools from any meaningful regulation. I am reinforced in this conclusion by the fact that title 6 contains entire sections that do not even apply to K-12 education: for example, chapters 50-55 of title 6 deal with vocational technical education, chapters 60-71 deal with post-secondary education and chapters 80 and above deal with college financial assistance.
Indeed, if the legislature had invested the ASBE with unfettered discretion to determine which parts of title 6 to enforce and which not to enforce, I believe its action might well be subject to constitutional challenge as an unlawful delegation of legislative authority in violation of Ark. Const. art. 4, §§ 1 and 2 (charging the three branches of government with performing distinct functions), and Ark. Const. amend. 7
(vesting the people's legislative power in a General Assembly); see also
Kan. Op. Atty. Gen. No. 95-117 (opining that a statute affording the state board of education the authority to adopt or determine laws relating to charter schools contrary to express statutory provisions amounts to an unlawful delegation of legislative authority in violation of the Kansas constitution). As one of my predecessors observed in Ark. Op. Att'y Gen. No. 2000-073:
[I]t has been held that:
 The legislature cannot vest an administrative agency with the power in its absolute and unguided discretion to apply or withhold the application of the law or to say to whom a law shall or shall not be applicable. (Citation omitted). "Should a statute clothe an administrative officer with the discretion as to the administration of the statute and also clothe him with the right to determine what the law is, or give him the opportunity to apply it to one and not apply it to another in like circumstances, either would constitute an unlawful delegation of legislative power." (Citation omitted).
 Illinois v. Tibbitts, 56 Ill.2d 56, 305 N.E.2d 152 (1973) at p. 155.
Question 2: May the ASBE exempt charter schools from provisions ofArkansas law or ASBE rules and regulations that generally apply to publicschools, if charter schools are not specifically mentioned in the law?
As reflected in my response to your previous question, I believe the answer to this question is "yes," A.C.A § 6-23-103(5), subject to the condition that the ASBE's exemptions must be consistent with the monitoring responsibilities and pursuit of educational goals the legislature has mandated for charter schools.
Question 3: Is it permissible for charter school board members,administrators, or employees to be directly or indirectly interested incontracts (other than employment contracts) with a charter school?
I cannot answer this question definitively in the abstract. The Code does envision the referenced officials possibly entering into such contracts in "unusual and limited circumstances" after proper approval, see A.C.A § 6-24-105(c)(1)(A); however, only a finder of fact could determine if such circumstance exist in any particular case.
Title 6, chapter 24 of the Code (Supp. 2003) sets forth ethical guidelines applicable to personnel associated with public educational entities. The Code defines the term "public educational entity" as including charter schools. A.C.A § 6-24-102(15)(A).
With respect to board members, A.C.A § 6-24-105(a) provides:
 General Prohibition. Except as otherwise provided, it is a breach of the ethical standards of this chapter for a board member to contract with the public educational entity the member serves if the board member has knowledge that he or she is directly or indirectly interested in the contract.
Subsection (c)(1)(A) of this statute authorizes the following exception:
 In unusual and limited circumstances, a public educational entity's board may approve a contract between the public educational entity and the board member or the member's family if the board determines that the contract is in the best interest of the public educational entity.
Subsection (c)(1)(C) provides that any board member having a direct or indirect interest in a proposed contract may not vote on the contract and must leave the meeting while the board considers it. Subsection (c)(2) provides that if transactions with a board member or his family will total $5,000 or more in any fiscal year, the Director of the Department of Education must independently review and approve the transaction, with the approval effective for no longer than two years.
With respect to administrators, A.C.A § 6-24-106(a) provides:
 (1) Except as otherwise provided, it is a breach of the ethical standards of this chapter for an administrator to contract with the public educational entity employing him or her if the administrator has knowledge that he or she is directly or indirectly interested in the contract.
 (2) Except as otherwise provided, it is a breach of the ethical standards of this chapter for an administrator to contract with any public educational entity if the administrator has knowledge that he or she is directly interested in the contract.
Subsection (c)(1) of this statute authorizes the following exception:
 In unusual and limited circumstances and only with prior written approval from the director, an administrator may contract with a public educational entity other than the one employing him or her.
Subsection (c) further sets forth the procedure for obtaining the approval of the board and the director.
With respect to employees, A.C.A § 6-24-107(a) provides:
 General Provision. Except as otherwise provided, it is a breach of the ethical standards of this chapter for an employee to contract with the public educational entity employing him or her if the employee has knowledge that he or she is directly interested in the contract.
Subsection (b)(1)(A) of this statute authorizes the following exception:
 In unusual and limited circumstances, a public educational entity's board may approve a contract between the public educational entity and an employee if the board determines that the contract is in the best interest of the public educational entity.
Subsection (b) further sets forth the same conditions as apply to board members — namely, board approval and, in the event a contract will yield more than $5,000 in income to the employee in one fiscal year, independent approval by the director.
I am neither equipped nor authorized to opine whether any particular school's status as an open-enrollment charter school would qualify its circumstances as "unusual and limited" in a way that might in itself warrant excepting it from the general ethical proscriptions discussed above. Only a finder of fact could make this determination on a case-by-case basis. I can only opine that the ethical rules set forth in title 6, chapter 24 of the Code will apply to charter schools just as they will to any K-12 public school.
Question 4: Where administrators or personnel for charter schools arecontracted through, or paid by, another organization, may thoseadministrators or school personnel be interested directly or indirectlyin contracts with the charter school, or obtain benefits from contractsthe charter school may have with the entity paying the salaries of theadministrators or school personnel?
Subsection 6-24-102(1) of the Code defines the term "administrator" as follows:
 "Administrator" means any superintendent, assistant superintendent or their equivalent, school district treasurer, business manager, or other individual directly responsible for entity-wide purchasing[.]
Subsection (10) of this statute defines the term "employee" as follows:
 "Employee" means a full-time employee or part-time employee of a public educational entity[.]
In my opinion, regardless of who pays the salaries of administrators or other charter school personnel, so long as the administrators or personnel are engaged in fulfilling a school's obligations under its charter, they will be subject to the ethical strictures discussed in my response to your previous questions.
Question 5: Are charter schools subject to the provisions ofAct 1599 of 1999 [sic. 2001] (A.C.A. 6-24-101 et seq.)?
As reflected in my response to your third question, I believe charter schools are subject to Act 1599 of 2001. A.C.A § 6-24-102(15)(A).
Question 6: Under the provisions of Act 1599 of 1999 [sic: 2001], or anyother law, may a board member, administrator, or employee of a charterschool be directly or indirectly interested in contracts or profits of anonprofit or for-profit corporation that contracts with, or providesservices to, the charter school?
See response to question 3.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] The legislature has created two other varieties of charter schools. "Ordinary" or "conversion" charter schools are, as these terms suggest, standard public schools that have converted to charter schools.See title 6, chapter 23, subchapter 2 of the Code. "Limited" charter schools operate under "a limited charter status for alternative comprehensive staffing and compensation programs designed to enhance student and teacher performance and improve employee salaries, opportunities, and incentives." A.C.A § 6-23-601(a)(1) (Supp. 2003). You suggest in your factual recitation that a "virtual academy," which would entail computerized home instruction, would fall under the definition of an "open enrollment charter school." However, as noted above,Act 77 of 2003, § 8 (2d Ex. Sess.) prohibits the ASBE from funding any charter school that primarily operates outside a "traditional classroom setting."
[2] The Code defines the term "eligible entity" as follows:
 "Eligible entity" means a public institution of higher education, a private nonsectarian institution of higher education, a governmental entity, or an organization that is nonsectarian in its program, admissions policies, employment practices, and operations and is exempt from taxation under § 501(c)(3) of the Internal Revenue Code of 1986[.]
[3] Those restrictions are mainly set forth in title 6, chapter 23, subchapter 3 through 6 and title 6, chapter 24 of the Code.